E-FILED
Thursday, 06 March, 2025 02:36:14 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JANE DOE 1, and JANE DOE 2, on behalf of themselves and all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 1:24-cv-01475-JEH** |
| **CHESTNUT HEALTH SYSTEMS, INC.** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Chestnut Health Systems, Inc., ("Defendant" or "Chestnut") purposefully installed third-party trackers on its website. When patients like Plaintiffs Jane Doe 1 and Jane Doe 2 ("Plaintiffs") visited Chestnut's website, the trackers recorded patients' confidential health communications and private health information and then disclosed this information in combination with identifying information (such as IP addresses or identifying cookies) to third parties, like Facebook and Google, without these patients' consent or knowledge.

"Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiffs' personal, private, confidential health information to third parties.

*In the same context as this case*, Illinois state courts, Illinois federal courts—*including no less than five separate Northern District of Illinois Courts*—the Seventh Circuit, and courts across the country all agree—claims like Plaintiffs' are legally valid. *See, e.g.*, *Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's judgment on the pleadings); *Stein, et al., v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ("*Elmhurst*") (in online tracking technology case, denying defendant's motion to dismiss); *Kurowski v. Rush Sys. for Health*, , 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University*

*Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same); *see also* Exhibit A-1 (cases across the country finding same).

Defendant presents no valid legal reason why Plaintiffs' claims should be dismissed. Plaintiffs sufficiently stated their claims. Defendant failed to meet its heavy burden, and Plaintiffs thus ask that this Court deny Defendant's motion to dismiss in its entirety.

## II. BACKGROUND

Defendant is a trusted Illinois private hospital. Amended Class Action Complaint, DE 13 ("Compl.") ¶¶ 40-41. Defendant encourages patients to use its Website to search for health information, physicians, and more; to make appointments, access information regarding payment of bills, find locations and services, access the patient portal, contact Chestnut Health, and more. *Id.* ¶ 11.

Defendant maintains privacy policies on its Website (Complaint Exhibit B [DE 1-2] and Exhibit C [DE 1-3]) (collectively, "Privacy Policies"). Therein, Defendant promises: "uses and disclosures of your PHI will be made only with your written authorization… include[ing] the disclosure [for] marketing communications." *Id.* ¶ 108. Despite these promises, and unbeknownst to patients like Plaintiffs, Defendant installed trackers on its Website which collected and disclosed their Private Information, including Personally Identifying Information ("PII") and/or Protected

Health Information ("PHI") to third parties, including Meta Platforms, Inc. d/b/a Meta ("Facebook" or "Meta"), Google, LLC ("Google"), and potentially others ("the Disclosure"). *Id.* ¶ 1. Defendant did this without patients' knowledge or authorization. *Id.* ¶ 10.

Plaintiffs are Defendant's patients. Jane Doe 1 was a mental health inpatient for Major Depressive Disorder and an eating disorder in 2023. *Id.* ¶ 139. Plaintiff Jane Doe 2 has received psychiatry, primary care, and pharmacy services through Chestnut Health. *Id.* ¶ 154. Plaintiffs used Defendant's Website to search for physicians and browse different services regarding mental health counseling (Doe 1, ¶ 140), and to use the patient portal multiple times a month and to search for support groups and potential Zoom meetings (Doe 2, ¶ 155). After using Defendant's Website, Doe 1 has been targeted by health-related online advertisements including ads for focus groups, studies for major depressive disorder, PTSD related ads, online counseling services, and information about weight management. *Id.* ¶ 145. Through its use of trackers, Defendant disclosed to third parties like Facebook the Private Information that patients like Plaintiffs submitted on Defendant's Website, including, *inter alia*: the pages and content they viewed, their statuses as patients, seeking of medical treatment, health conditions and treatment they sought, location, information regarding their patient portal activity, specialties of the medical providers they searched for and viewed, the search results that they clicked on, the medical services they viewed, and their identities. *Id.* ¶¶ 143, 151.

As a direct and proximate result of Defendant's Disclosure, Plaintiffs suffered myriad injuries, including: loss of privacy; unauthorized disclosure of and access to their Private Information by third parties; targeted health-related advertisements on Facebook and elsewhere reflecting their private medical treatment information; the difference between what Plaintiffs paid for medical services (which included reasonable protections for their Private Information), and

what they received, which, due to Defendant's Disclosures, did not include the privacy and security protections for which they paid; the portion of Defendant's revenues and profits attributable to collecting, serving and monetizing advertisements directed to Plaintiffs' Private Information without authorization and sharing it with third parties; value to Plaintiffs of surrendering their choice to keep their Private Information private and allowing Chestnut to track their data; embarrassment, humiliation, frustration, and emotional distress; decreased value of Plaintiffs' Private Information; lost benefit of the bargain; increased risk of future harm resulting from future use and disclosure of their Private Information; and statutory damages. *Id*. ¶¶ 153, 167.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'") (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

## IV. ARGUMENT

As follows, Defendant fails to meet its burden under Fed. R. Civ. P. 12(b)(6) to show that

Plaintiffs cannot prevail on their causes of action under the well-pleaded facts set forth in the Complaint, when properly taken as true. Accordingly, the Court must deny the Motion to Dismiss.

**A. Plaintiffs Sufficiently Alleged Negligence**

Plaintiffs alleged present injury and damages flowing from Defendant's unlawful disclosure of their Private Information, including the unauthorized access of their Private Information by third parties, the improper disclosure of their Private Information, lost benefit of their bargain, and lost value of their Private Information. Compl. ¶ 167. These are concrete, recoverable damages. Federal courts applying Illinois law recognize that just the allegations of fear, anxiety, and worry regarding the loss of control over one's private health information are sufficient to state a claim under Illinois law, "including in the data privacy context." *See, Loyola,* at *7 (citing *Roper v. Rise Interactive Media & Analytics, LLC*, 2024 WL 1556298, at *2 (N.D. Ill. Apr. 10, 2024) and *In re Gallagher*, 631 F. Supp. 3d 573 at 587).

In *Flores*, the Illinois Court of Appeals rejected an argument based on the economic loss rule in the context of a data breach. As *Flores* observed, "the Illinois Supreme Court [has] held that the doctrine applies to the service industry only where the duty of the party performing the service is defined by a contract executed with the client... [that] reasoning equally applies to data breach cases" 2023 IL App (1st) 230140 ¶ 57. "Since plaintiffs' common law tort claims are based on defendant's common law duty to safeguard personal information…the *Moorman* doctrine does not prohibit plaintiffs from bringing their claims." *Id*. The same is true here.

Additionally, *Moorman* recognized a duty is independent of a contract where a plaintiff's damages were caused by a defendant's intentional false representation. *Moorman*, 91 Ill. 2d at 89. This is especially applicable here because Defendant made (false) affirmative representations to Plaintiffs and the Class, who are its patients, that it was not collecting or selling their personally identifying information for its own profit when it was, in fact, employing tracking technologies to

do just that. Compl. ¶ 95. Thus, the exception to the *Moorman* rule also independently precludes the economic loss doctrine from negating Plaintiffs' negligence claims.[1] *See also Elmhurst*, at *9 (in identical context, allowing negligence because "Illinois law imposes a duty on data collectors to maintain reasonable security measures… It's not "you buy it, you break it," but it's in the same neighborhood. You collect it, you keep it safe.").

Yet further, the damages Plaintiffs claims are not purely economic loss. For purposes of the economic loss rule "[e]conomic loss is defined as 'damages for inadequate value…without any claim of personal injury or damage to other property.'" *Flores* ¶ 56. But Plaintiffs' damages here include "embarrassment, humiliation, frustration, and emotional distress." Compl. ¶ 140. The economic loss rule does not bar such damages. Defendant's argument fails.

### B. Plaintiffs Sufficiently Alleged Negligence *Per Se*

Defendant's disclosure of Plaintiffs' Personal Information breached the duty it owed them under common law, the FTC Section 5, and HIPAA, to safeguard their Personal Information, causing them injury. Compl. ¶¶ 246-70. This is sufficient under Illinois law. *See, e.g.*, *Aspen Dental*, at *9; *Loyola*, at *7; *Krupa*, at *1.[2] As the Northern District of Illinois recently explained, in an identical context allowing negligence claim, "Illinois law imposes a duty on data collectors to maintain reasonable security measures… It's not 'you buy it, you break it,' but it's in the same neighborhood. You collect it, you keep it safe." *Elmhurst*, at *9.

Defendant's private right of action argument similarly fails. In Illinois, statutes with no private cause of action "can serve as the basis of a negligence per se claim." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760 (C.D. Ill. 2020). Plaintiffs assert a negligence *per se* claim that runs

[1] Defendant's citation to the *Genesis* case is unavailing, as an Amended Complaint was filed in that case, reasserting negligence claims, and the Motion to Dismiss is not yet even ripe.

[2] *See also* Exhibit A-3 and A-4.

alongside their negligence claim, using the FTC Act and HIPAA as evidence of Defendant's negligence—exactly what *Flores* reaffirmed was appropriate. *Fores*, ¶ 28 ("defendant's alleged violations of the FTC Act could be offered as prima facie evidence of defendant's negligence").

### C. Plaintiffs Sufficiently Alleged Breach of Contract

Plaintiffs provided monetary compensation to Defendant in exchange for medical care. Compl. ¶¶ 271-92. As a condition of medical care, Defendant required its patients to provide their private, confidential, health information. *Id.* In return, Defendant provided its patients with promises or terms of the contract through its conduct, privacy policies, elsewhere—its implied, implicit, elevated duty as health care provider, and good faith duties—to keep that private, confidential, health information secure and confidential. *Id.* When, in the course of conduct, health care providers require patients to provide confidential information, the implied promise is that health care providers will keep this *confidential* information *confidential*—in the same condition it received it. That is, "[y]ou collect it, you keep it safe." *Elmhurst*, at *9. Defendant failed to do this, and thus breached its contractual obligations.

#### a. <u>Breach of Express Contract</u>

Defendant first takes issue with Plaintiffs' alleged facts. The Court cannot resolve factual issues, and Plaintiffs' allegations must be accepted as true. *Mann*, 707 F.3d at 877.[3] Defendant next argues that its Terms of Use indemnify it. In Illinois, disclaimers of liability in contract for breach of said contract are reviewed with strict scrutiny and must meet specific legal standards to be enforceable; "exculpatory agreements are not favored and are strictly construed against the

---

[3] Defendant points to urls in the Amended Complaint which, due to scrivener's error, point to the wrong website. However, Exhibits B and C to Plaintiffs' Original Complaint are clearly Defendant's Notice of Privacy Practices [DE 1-2] and Defendant's Terms of Use [DE 1-3]. These are the exhibits referenced in the Amended Complaint. If the Court would like Plaintiff to file these exhibits again, Plaintiff is happy to do so. Regardless, Defendant's argument takes issue with the facts, which the Court cannot resolve at this stage.

party they benefit." *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 412 (1st Dist. 2007). Here, the terms Defendant points to are a purported disclaimer of any and all liability arising from any use of its website. First, and dispositive of Defendant's argument, Defendant cannot free itself of liability by pointing to these terms because, reaching Defendant's conclusion would require interpretation in Defendant's favor—and the Court must make all inferences in Plaintiffs' favor. Defendant cannot point to any statement absolving it of liability from its intentional sale of patients' personal information.

Nor can Defendant fully exculpate itself through such a disclaimer, as "warranty disclaimers that are inconsistent with an express warranty are ineffective." *In re VTech Data Breach Litig.*, 2017 WL 2880102, at *8 (N.D. Ill. July 5, 2017) (citing *Jewelers Mut. Ins. Co. v. Firstar Bank Illinois*, 213 Ill.2d 58, 65 (2004) ("A party cannot promise to act in a certain manner in one portion of a contract and then exculpate itself from liability for breach of that very promise in another part of the contract."). Defendant made such express promises in its Privacy Policies: "uses and disclosures of your PHI will be made only with your written authorization…include[ing] the disclosure [for] marketing communications." Compl. ¶ 108. Defendant cannot promise to use and disclose patient PHI only with written authorization, and then exculpate itself for breach of that very promise in another part of the contract.

To illustrate, if Defendant had suffered an *accidental* data breach arising from third party hackers, it would still be liable for the disclosure of patient data, regardless of a disclaimer. *See, e.g.*, *VTech Data Breach Litig.*, 2017 WL 2880102, at *8. And Defendant's "duty is not limited to allegations of data breach." *Elmhurst*, at *9 (rejecting defendant's argument that privacy policies disclaimed liability). Defendant is arguably *more* liable for its intentional disclosure of its patients' information. Defendant does not and cannot point to even a shred of case law to show that its

purported exculpatory clause controls here. The burden is on Defendant to make such a showing; as such, Defendant has failed to meet its burden and its motion must be denied.

**b. <u>Breach of Implied Contract</u>**

Regardless of Plaintiffs' breach of express contract, as already discussed above Plaintiffs have sufficiently alleged breach of implied contract, including damages. Plaintiffs plead actual, economic damages. *See, e.g.,* Compl. ¶¶ 153, 167, 253 (pleading monetary damages, lost benefit of the bargain, lost value of Private Information and diminution in value, lost use of Private Information without compensation, lost time and money incurred to mitigate and remediate the effects of use of Private Information, and lost value to Plaintiffs and Class Members of surrendering their choices to keep their Private Information private and allowing Defendant to track their data).

Illinois law is clear: "A defrauded purchaser is entitled to damages which will give him the 'benefit of his bargain'"—a harm which Plaintiffs alleged and which is solely sufficient. *Posner v. Davis*, 76 Ill. App. 3d 638, 644–45 (1979); *see also, e.g.*, *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979) ("The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of "personal" information, E.g., information relating to the patient's mental or physical condition or the physician's diagnosis or treatment."); Plaintiffs further alleged decreased value of their private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant's unauthorized sale of Plaintiffs' Private Information, and increased risk of future harm. Compl. ¶¶ 153, 167, 253; *see e.g., Gallagher*, 631 F. Supp. 3d at 587 (damages sufficient for breach of implied contract include "loss of the economic value of purchases"). And Plaintiffs' mitigation allegations are sufficient. *See Krupa*, at *2, n. 1 (defendant "would then have to go on to show that [plaintiff's] mitigation damages and the

potential "imminent harm" of identity theft are likewise insufficient harms, which it cannot do."). Defendant does not even engage with these allegations.

As the Southern District of Indiana has explained in the similar data breach context, analyzing a breach of contract claim, "[t]he measure of a bailor's damages is the amount that will compensate him or her for the actual loss proximately resulting from the bailee's negligence or willfulness.'" *Krupa*, at *4-5 (finding injury sufficiently alleged to survive a 12(b)(6) motion to dismiss where plaintiff alleged defendant "held his personal data subject to a shared understanding that it would remain confidential, but that [defendant] negligently exposed that data"). This is contrary to the inapposite *Flores*. Furthermore, "even where actual damages are unproven, nominal damages are available for breach of contract." *Id.* "And [n]ominal damages can be, and sometimes are, awarded for the loss of personal property where the plaintiff proves defendant's liability but cannot prove any basis for assessing value to the chattel in question.'" *Id; see also Loyola*, at *4, 10 (finding extremely similar common law and statutory claims meritorious, and specifically finding the plaintiffs sufficiently pleaded harm and standing, explaining: "[t]he alleged disclosure of the plaintiffs' sensitive health information...[is] sufficient, at this early stage in litigation, for the Court to conclude that the plaintiffs' allegations sufficiently resemble the type of loss protected by the tort of public disclosure of private information such that the loss constitutes an injury-in-fact...'fairly traceable' to [defendant's] online platform...[and] both the alleged disclosure of the plaintiffs' medical information, as well as the risk of future harm from subsequent disclosures, is redressable by this Court."). Plaintiffs' claims here are likewise sufficient.

Finally, Defendant argues that Plaintiffs cannot maintain both an express and an implied contract. Defendant's argument is legally incorrect—at this stage of litigation the Court need not resolve questions of alternative claims or theories. *See, e.g., Indianapolis Airport Auth. v.*

*Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 366 (7th Cir. 2017) ("The Federal Rules of Civil Procedure—which allow alternative and even inconsistent pleadings and take a permissive view of amendments—are drafted flexibly so parties may tailor their theories as they conduct discovery and learn more about the case."); *Langston v. Mid-Am. Intercollegiate Athletics Ass'n*, 448 F. Supp. 3d 938, 954 (N.D. Ill. 2020) ("the Federal Rules of Civil Procedure allow [a plaintiff] to allege breaches of express and implied contract in the alternative.").

Thus, Defendant has failed to meet its burden and its motion must be denied.

**D. Plaintiffs Sufficiently Alleged Unjust Enrichment**

Plaintiffs sufficiently alleged unjust enrichment when they alleged they conferred their PHI upon Defendant under the promise it would not disclose their PHI, Defendant then disclosed their PHI anyway, and it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiffs' PHI under the premise of confidentiality. Compl. ¶¶ 293-300; *see Lozada*, at ¶ 37.[4] Defendant argues unjust enrichment is not a standalone claim. "Rather, it is condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence or, alternatively, it may be based on contracts which are implied in law." *Lozada*, ¶ 35 (citations omitted). Thus Plaintiffs' claim is proper as pleaded, in combination with Plaintiffs' contract and Illinois state statutory claim. And again, claims in the alternative are allowed under the federal pleading standard at this stage.

**E. Plaintiffs Sufficiently Alleged Bailment**

Plaintiffs sufficiently alleged their bailment claim. Under Illinois law, to establish a bailment claim, a plaintiff must allege (1) an agreement by the bailor to transfer, and the bailee to accept, exclusive possession of goods for a specified purpose, (2) actual delivery or transfer of

---

[4] *See* Exhibit A-6 (listing orders allowing unjust enrichment claims).

exclusive possession of the property of the bailor to the bailee, (3) acceptance of exclusive possession by the bailee, and (4) consideration. *Kirby v. Chicago City Bank*, 82 Ill. App. 3d 1113, 1116 (App.Ct.Ill. 1980). Plaintiffs alleged just that: they agreed to entrust their Personal Information to Defendant, which Defendant accepted, Defendant had exclusive possession, and the parties exchanged consideration in the form of monetary compensation and Private Information in exchange for medical services and confidentiality of Private Information. Compl. ¶¶ 301-07. As the Southern District of Indiana found that when a defendant held onto personal data subject to a shared understanding that it would remain confidential, and then subsequently exposed it, "[plaintiff] need[s] nothing more to establish a breach of bailment claim." *Krupa*, at *5.

Defendant argues that Plaintiffs' bailment claim fails because Plaintiffs cannot show that Defendant took "exclusive possession" of their Private Information, citing to *In re Mondelez Data Breach Litig*., 2024 WL 2817489, at *9 (N.D. Ill. June 3, 2024). However, a closer examination of the tort defeats Defendant's argument. The simple fact that the bailor retains control over property does not defeat the "exclusive possession" element of a bailment claim. Illinois appellate courts have held exactly this, where an automobile owner entered into a bailment with an automobile repair shop to repair the care, but retained the keys, only to have the car damaged while under the bailee's care. *Wright*, 129 Ill. App. 3d at 425 (1984). The thrust of the "exclusive possession" element is simply that the bailor entrusted the property to the bailee's sole control. This certainly occurred here—once Plaintiffs entrusted their property, their Private Information, to Defendant, they lost control over the use of that Data. Defendant used and Disclosed the Private Information for a marketing purposes, a purpose other than as intended, resulting in damages,

including loss of value of the information. Thus, Plaintiffs can satisfy the "exclusive possession" element of their breach of bailment claim, and Defendant's motion must be denied.[5]

### F. Plaintiffs Sufficiently Alleged Trespass to Chattel

In Illinois, a plaintiff can show a trespass to chattel by demonstrating "*[a]ny* unlawful exercise of authority over the goods of another… *even though no physical force is exercised*." *Burks v. Lex Special Assets, LLC,* 2016 Ill. Cir. LEXIS 2504, *13 (quoting *Callagan v. American Trust & Savings Bank*, 196 111. App. 102,106-07 (1st Dist. 1915) (emphasis added). A trespass to chattel can also arise where the defendant's use of the plaintiff's property results in the *diminution of its quality, condition, or value*. *Sotelo v. DirectRevenue, LLC,* 384 F. Supp. 2d 1219, 1229 (N.D. Ill. Aug. 29, 2005) (applying Illinois law and quoting Restat 2d of Torts, § 218(b)) (emphasis added).

Here, Plaintiffs plead that that Defendant intentionally collected and disclosed their Private Information, property that belonged to them and not to Defendant, to third parties without their authorization or consent. Compl. ¶¶ 1, 26, 318-25. Plaintiffs further allege that their Private Information had tremendous financial value, and that if did not have value, then entire industries that sell and trade this data would not exist. *Id*. ¶¶ 218-22. Last, Plaintiffs plead that Defendant's unlawful disclosures diminished the value of their Private Information and caused them other damages, such as the loss of privacy. *Id*. ¶¶ 153, 167. These allegations state a trespass to chattel claim at the pleading stage. *See Tuite v. Corbitt*, 224 Ill. 2d 490, 510 (2005) (holding a cause of action should not be dismissed under section 2-615 unless it is clear that no set of facts can be proved under the pleadings that would entitle the plaintiff to recover).

---

[5] Plaintiffs further address Defendant's "property" argument in the Trespass to Chattel section below.

Defendant argues that Plaintiffs' Private Information is not chattel. Although Illinois courts have not addressed this issue, courts around the country have held such information is "property." *See Collins v. Athens Orthopedic Clinic, PA*, 307 Ga. 555, 562, 837 S.E.2d 310 (2019) (recognizing that an important part of the value of data to anyone attempting to buy it on the black market is its utility in committing identity theft); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (recognizing property interest in personal information); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 637 (N.D. Cal. 2024) (recognizing loss of value of PII and consequential out-of-pocket expenses as cognizable categories of damages for negligence claims under California law). A Washington state appellate court recently examined the issue of whether PII and PHI, such as name, address, and treatment/diagnosis information, was "property" that could considered to be damaged or destroyed. *Nunley v. Chelan-Douglas Health Dist.*, 32 Wn. App. 2d 700, 706, 721 (Oct. 31, 2024). In its analysis, the court noted that the laws of Washinton demonstrated a public policy recognizing the value in the security of personal information, citing, *inter alia*, the Washington Uniform Health Care Information Act, which "recognizes that '[h]ealth care information is personal and sensitive information that if improperly used or released may do significant harm to a patient's interests in privacy, health care, or other interests.'" *Id*. at 723-724. The court then held, "[c]onsidering Washington's existing law and the realities of the digital economy we live in now, we…*hold that a person's means of identification, PII and PHI, can have value and conceivably that value can be diminished or destroyed*." *Id*. at 724 (emphasis added).

Like Washington, Illinois recognizes the value and security of Private Information. The Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/5, mandates that, *inter alia*, a private entity must obtain a signed "written release" before collection an individual's biometric information and must inform the individual the purpose for collecting the information, and the

length of time it will be collected, stored and sued. *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 21 (2022) (quoting 740 ILCS 14/1 § 15(b)). BIPA's legislative intent states that the General Assembly finds, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers *and information*. 740 ILCS 14/5(g) (emphasis added). Moreover, under the Illinois Freedom of Information Act, 5 ILCS 140/1, section 7(b)(iii) sets forth, as a *category of property*, "*files and personal information* maintained with respect to any applicant, registrant or licensee by any public body…" (emphasis added). Accordingly, the Court should find that Plaintiffs' Private Information is indeed property that can be subject to trespass to chattel claim.

Defendant also argues that Plaintiffs' allegations are "conclusory" with respect to the damages sustained to his Private Information, but this is plainly false. Plaintiffs plead, *inter alia*, damages by way of a loss of privacy, that they did not receive the data security protections for which they paid, embarrassment, humiliation, frustration, and emotional distress, decreased value of their Private Information, and loss benefit of the bargain. Courts around the nation have held that such allegations constitute cognizable damages, and this Court should too. *Loyola*, *9 (plaintiffs adequately pleaded injury-in-fact based on the disclosure of their medical information under analogous circumstances); *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *22 (D. Or. Aug. 28, 2024) (same); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 149 (D. Mass. Apr. 23, 2024) (same); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *7 (Elkhart Co. Sup. Ct.) (same). Defendant's motion should therefore be denied.

**G. Plaintiffs Sufficiently Alleged Violation of the Illinois Eavesdropping Statute ("IES")**

Plaintiffs alleged Defendant intentionally employed third-party source code to intercept and disclose their Private Information to third parties without their consent—a tortious violation

of Illinois law as recognized by multiple Northern District of Illinois courts. *See Kurowski IV*; *Kurowski III*; *Loyola*; *Kurowski II*; *see also* Exhibit A-10 (orders allowing wiretap claims).

First, the Court need not consider Defendant's arguments, because their federal wiretap claim survives. Under federal law, states may not enact standards for electronic surveillance that are less stringent than those set by the Federal Wiretap Act. *See, e.g.*, *People v. Allard*, 2018 IL App (2d) 160927, ¶ 18 ("The trial court also restated the well-settled concept that…Congress preempted the regulatory field of electronic surveillance, and therefore Illinois may not enact standards that are less stringent than the requirements set by the federal statute."). As set forth below, Plaintiffs' federal wiretap claim is sufficient. Because that claim survives, so too must Plaintiffs' Illinois wiretap claim.

If the Court is inclined to consider Defendant's arguments, the claim is still sufficient. Defendant argues that Illinois limits its statute to "oral" communications. But the IES is not limited to literal "oral" communications. The IES explicitly states that the civil cause of action applies to "[a]ny or all parties to any conversation *or electronic communication*." 720 ILCS 5/14-6. And Illinois has implicitly recognized the applicability of the IES to electronic, written messages. *See, e.g.*, *People v. Gariano*, 366 Ill. App. 3d 379, 385 (1st Dist. 2006) (discussing the applicability of the IES to instant messages from a child predator, ultimately finding the messages at issue fell outside the statute based on intent); *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022) (considering the applicability of the IES to zoom chat messages, ultimately deciding based on intent).

Next, Defendant argues that it was a party to the communications. Defendant relies entirely on its own interpretation of the statute and provides the Court with no law to guide its analysis. Furthermore, Defendant entirely ignores most of the statute. It is a violation of the IES to eavesdrop

"for the purpose of transmitting or recording all or any part of any private *conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation*." 720 ILCS 5/14-2 (emphasis added). Indeed, the court in *Loyola* rejected Defendant's argument:

> [plaintiffs] allege violations based on use of an eavesdropping device 'for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party.' *That [defendant] is alleged to have been a party to the intercepted communications is, thus, not fatal to the plaintiffs' claim.*

*Id*. at *25-26 (emphasis added, internal citation omitted); *see also Aspen Dental*, at *4 (same). Defendant's argument is legally wrong, and its motion must be denied.

### H. Plaintiffs Sufficiently Alleged Violation of the Electronic Communications Privacy Act

Illinois district courts—including *five different courts* in the Northern District of Illinois—have held that such allegations are sufficient in this exact context. *See, e.g., Elmhurst*, at *6; *Aspen Dental*, at *9; *Loyola*, at *18; *Hartley*, at *7; *Kurowski IV*, at *21-22. Accordingly, the Court should follow the well-reasoned rulings in similar cases in this Circuit and deny Defendant's Motion to Dismiss Plaintiffs' ECPA claims.

#### a. 18 U.S.C. § 2511(1)

Defendant first argues that Plaintiffs' ECPA claims are insufficiently pleaded under 18 U.S.C. § 2511, as it was a party to the communication. Defendant recognizes the flaw in its argument; Plaintiffs allege that party exception does not apply because the crime-tort exception *does* apply. "Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA." *Elmhurst*, at *5. A court in the Northern District of Illinois illustrated why under the same allegations at issue here:

> consider a hypothetical about jaywalking. Imagine if the City of Chicago banned jaywalking, with one exception. Imagine if the City of Chicago allowed jaywalking

> if a person is by himself, unless that person jaywalks for the purpose of committing a crime or tort.
>
> Suppose that the Joker jaywalked by himself for the purpose of robbing Gotham Bank across the street. In that scenario, the "crime or tort" is not the jaywalking. The crime or tort is the bank robbery. So the carve-out to the exception would apply. And Commissioner Gordon could give the Joker a ticket for jaywalking (in addition to arresting him for robbing the bank).
>
> But imagine if the Joker jaywalked by himself for the purpose of saying hello to the Penguin across the street. Saying hello to the Penguin is not a crime or a tort. So, the carve-out to the exception would not apply. In that situation, the Joker would not violate the jaywalking ordinance – he jaywalked, but he was by himself, and he didn't jaywalk to commit a crime or tort.

*Id.* at *4. "A disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA." *Id.* "That's enough to conclude that the crime-tort exception applies." *Id.* "That is, the crime-tort exception to the one-party consent rule applies, because a violation of HIPPA is a crime or tort." *Id; see also Aspen Dental*, at *9; *Loyola*, at *18; *Hartley*, at *7; *Kurowski IV*, at *21-22.

**b. <u>18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702</u>**

Here, Plaintiffs sufficiently alleged their ECPA claims by alleging Defendant intentionally employed third-party source code to intercept and disclose their Protected Information to third parties without their consent. Compl. ¶¶ 350-98. Illinois district courts—*including four different Courts in the Northern District of Illinois*—have found allegations are sufficient *in this exact context*. *See, e.g.*, *Loyola*; *Aspen Dental*; *Kurowski IV*; *Hartley*. So too here, Plaintiffs' ECPA claims are sufficient.

Defendant asserts Plaintiffs' claim fails because it is not "an electronic communication service provider. But this argument rests on a misreading of the statute. The statute imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). There is no question that Defendant "provided," *i.e.*, made available, its

website to the public. *See, e.g.*, Compl. ¶¶ 10-11. The majority of Illinois courts that have addressed ECPA claims in the hospital website privacy context have concluded that ECPA claims have merit in this context. *See, e.g., Loyola; Aspen Dental; Kurowski IV; Hartley*. And courts outside of Illinois have recently ruled against Defendant's position that only electronic communications services' such as internet service providers" qualify as an electronic communication service provider. For example, in *BetterHelp, Inc. Data Disclosure* the defendant argued, as Defendant does here, that the plaintiffs ECPA claim should fail because it was not "in the business of providing electronic communications services, in the manner of ordinary email and internet service providers." 2024 U.S. Dist. LEXIS 187442, at *10 (N.D. Cal. Oct. 15, 2024). There, the court dismissed this argument and ruled the defendant "has not shown the statute should be construed so narrowly as to apply only to internet service providers." *Id*; *see also Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.,* 793 F. Supp. 2d 1302, 1316 (N.D. Ga. 2011) (defendant "likely violated the SCA by intercepting her personal email account trade-secret material" without her consent).

Finally, Defendant argues Plaintiffs' claims fail because it was the intended recipient of Plaintiffs' communications. Defendant cites no legal authority to support this contention. As Plaintiff has already explained above, the crime-tort exception applies here, and that it was the intended recipient is of no moment. Furthermore, as one district court explained in just this context, where "Defendant knowingly used software on their website which forwarded private communications to third parties…then the party exception does not apply as Defendant would have shared these communications with entities who were not original parties to the conversation." *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, at *8 (D. Ariz. May 10, 2024) (explicitly rejecting defendant's argument that "because they were the intended recipient of all

communications with the Plaintiffs, they could not have unlawfully intercepted these communications under the ECPA").

Defendant has again failed to meet its burden. Its motion must thus be denied.

**I. Plaintiffs Sufficiently Alleged Violation of the Computer Fraud and Abuse Act**

Defendant argues Plaintiffs failed to allege loss. But Plaintiffs alleged that Defendant's secret transmission of their Private Information, which were never meant for public consumption, resulted in numerous losses which aggregate to at least $5,000 in value, including but not limited to monetary damages, loss of privacy, unauthorized disclosure of Private Information, decreased value of Private Information, lost benefit of the bargain, and increased risk of future harm resulting from further unauthorized disclosure of their information. Compl. ¶¶ 153, 167. These allegations are sufficient. *Fidlar Techs. v. LPS Real Estate Data Sols.*, 2013 U.S. Dist. LEXIS 159929, at *28-29 (C.D. Ill. Nov. 8, 2013) (allegations that defendant's access in authority resulted in a decrease in plaintiff's revenue and that plaintiff suffered monetary damages in excess of $5,000, sufficient).

Defendant next cites *Van Buren* and other off point cases to argue that it did not "exceed" its "authorized access" to Plaintiffs' Private Information by disclosing it to third parties like Facebook. But Plaintiffs alleged Defendant had *no* authorized access to disclose their data. Compl. ¶¶ 10 (Defendant "knowingly configured and implemented into its website ... trackers ... without Plaintiffs and Class Members' knowledge or authorization"). This violates CFAA; for one thing, "*Van Buren's* holding applies only to the exceeds authorized access prong and did not similarly limit the scope of the other provisions of the CFAA, including the without authorization prong." *ACI Payments, Inc. v. Conservice, LLC*, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022). Third parties like Facebook and Google had *no authorization* to access Plaintiffs' computers whatsoever and any further question is one of fact. *See, e.g.*, Compl. ¶¶ 10, 16, 26, 69, 72; *United States v. Thompson*, 2022 WL 834026, at *4 (W.D. Wash. Mar. 21, 2022) ("Any argument that mistake or

technological process rendered defendant 'authorized' is properly resolved by the trier of fact.").[6]

Defendant does not even attempt to argue it had unfettered authorization to access Plaintiffs' computer and information—of course it did not. Defendant did not have, for example, "administrative access to [Plaintiffs'] servers and systems." *Anaya v. Birck*, 2024 WL 2209345, at *11 (N.D. Ill. May 16, 2024). This alone requires discovery to determine what data Defendant accessed and whether such access "exceeded" Defendant's authority under its contracts with Plaintiffs and the law. *See, e.g.*, *Moonlight Mountain Recovery v. McCoy*, 2024 WL 4027972, at *4 (D. Idaho Sept. 3, 2024) (under CFAA, "questions regarding a person's authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries."). Defendant's Motion should be denied.

### J. Plaintiffs Sufficiently Alleged Putative Damages and Attorneys' Fees

Finally, Defendant argues that Plaintiffs may not recover attorney fees nor punitive damages. Defendant argues Plaintiffs cannot recover putative damages because they did not allege anything wanton, malicious, oppressive, or willful. But Plaintiffs alleged just that. They alleged, for example, Defendant "willfully and intentionally incorporating the Meta Pixel, potentially CAPI, and other third-party trackers into its Website and servers." Compl. ¶ 27. The court in *Kurowski IV* recognized the availability of punitive damages in this exact context:

> [defendant] intentionally programmed its web properties to intercept and transmit patients' sensitive health data specifically even though it knew it was not authorized to do so. This conduct is therefore akin to an intentional tort, and a reasonable factfinder could conclude that it was "accompanied by aggravated circumstances such as wantonness, willfulness, malice, fraud, or oppression, or when the defendant acts with such gross negligence as to indicate a wanton disregard for the rights of others."

---

[6] Defendant cannot shift liability for tracker use to third parties. *See e.g.*, *ACW Flex Pack LLC v. Wrobel*, 2023 WL 4762596, at *7 (N.D. Ill. July 26, 2023) ("Ownership [of the server] does not matter. It makes no difference that [defendant] does not own the servers (presumably [a third party] does)." (citation omitted)).

*Kurowski IV*, at *9. Plaintiffs are also entitled to attorney fees under multiple claims. Their federal wiretap claim, for example, explicitly provides for "a reasonable attorney's fee and other litigation costs." 18 U.S.C.A. § 2520(b).

Defendant utterly fails to provide the Court with any support for dismissing Plaintiffs' prayer for putative damages or attorney fees at this early stage, and its motion must therefore be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated: March 6, 2025

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*

J. Gerard Stranch, IV (ARDC No. 6334061)
Andrew E. Mize (ARDC No. 6347228)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

Lynn A. Toops (ARDC No. 63337-43)
Amina A. Thomas (*Pro Hac Vice* forthcoming)
Mallory K. Schiller (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com
mschiller@cohenandmalad.com

Samuel J. Strauss (*Pro Hac Vice* forthcoming)
Raina C. Borrelli (ARDC No. 6340619)

STRAUSS BORRELLI PLLC
908 N. Michigan Avenue, Suite 1610
Chicago Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

***Counsel for Plaintiffs and the Proposed Class***

**CERTIFICATE OF COMPLIANCE**

In compliance with Rule 7.1(B)(4) the undersigned counsel certifies that this submission does not exceed the word count limitations imposed by Rule 7.1(B)(4)(b)(1). The word count per Microsoft Word processing system is 6,896.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was electronically filed with the Clerk of the Court using CMF/ECF which will deliver electronic copies of this filing to the designated email addresses for all counsel of record and was served via electronic mail, this 6th day of March, 2025, on the following:

Thomas S. LaSalle, Esquire
John M. Coleman, Esquire
HENNESSY & ROACH, PC
70W. Madison Street
Suite 1100
Chicago, IL 60602
Phone: 312.346.5310
tlasalle@hennessyroach.com

jcoleman@hennessyroach.com

Jill H. Fertel
Conor J. Hafertepe
CIPRIANI & WERNER, P.C.
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
Phone: 610.567.0700
Fax: 610.567.0712
jfertel@c-wlaw.com
chafertepe@c-wlaw.com

*Attorneys for Chestnut Health Systems, Inc.*

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV