E-FILED
Friday, 14 March, 2025 08:58:33 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JANE DOE 1** and **JANE DOE 2**, on behalf of themselves and all others similarly situated, | Case No. 1:24-cv-01475-JBM |
| Plaintiffs, | **MOTION TO DISMISS** |
| v. | **JURY TRIAL DEMANDED** |
| **CHESTNUT HEALTH SYSTEMS, INC.** | |
| Defendant. | |

**Defendant Chestnut Health Systems, Inc.'s Reply Brief in Support of Its Motion to Dismiss Jane Doe 1's and Jane Doe 2's First Amended Complaint <u>Pursuant to Federal Rule of Civil Procedure 12(b)(6)</u>**

## I. Introduction

Before the Court is Defendant Chestnut Health Systems, Inc.'s ("CHS") Motion to Dismiss ("MTD") Plaintiffs Jane Doe 1 and Jane Doe 2's ("Plaintiffs") First Amended Complaint (the "FAC") [Dkt #17]. On March 6, 2025, Plaintiffs submitted their Response in Opposition ("Opp.") [Dkt #20]. Notably, Plaintiffs do not oppose CHS's Motion concerning Count VII regarding Conversion. Accordingly, CHS concludes that Plaintiffs have conceded that this Count should be dismissed. With respect to the remaining causes of action, CHS submits the following Reply in Further Support of its Motion to Dismiss Plaintiffs' First Amended Complaint.[1]

[1] Defendant CHS incorporates its Motion to Dismiss the First Amended Complaint by reference and restates its arguments here. CHS files this reply only to address misapplications or misstatements of law and any argument in Plaintiffs' Opposition brief not addressed by this Reply should not be construed as waiver of that argument.

## II. Discussion

A. Plaintiffs' First Amended Complaint and Opposition are Riddled with Errors

Both Plaintiffs' FAC[2] and the Opposition brief show a failing to engage with the specifics of *this* case. For example, Plaintiffs' Opposition makes arguments opposing invented arguments that CHS does not make in its MTD, such as Plaintiffs' reference to a "private right of action argument" for Negligence Per Se (Opp. p. 6). Plaintiffs accuse CHS of failing to provide legal support for its arguments when it clearly has (see § B(c) *infra*), cite to Indiana cases that do not address Illinois law as supporting a claim under Illinois law (*See* Opp. p. 6, citing *Krupa v. TIC Int'l Corp.*, No. 1:22-cv-01951, 2023 WL 1886909 (N.D. Ill. Apr. 30, 2024), ignore the plain text of statutes they allege CHS violated (see § B(c), (d), (e) *infra*), and contradict the stated allegations in their FAC (see § B(e) *infra*). Moreover, Plaintiffs attach a 27-page collection of cases that they allege support their arguments without providing any analysis tying such cases to the facts alleged in the FAC.

Simply stated, the FAC as pleaded is fundamentally flawed, and Plaintiffs' Opposition does not overcome CHS's MTD under applicable law. Plaintiffs' First Amended Complaint must therefore be dismissed.

B. Plaintiffs Misrepresent CHS's Arguments and Misapply the Law

a. Negligence

*Moorman Mfg. Co. v. National Tank Co.*, as applied by *Doe v. Genesis Health Sys.*, dictates that Plaintiffs' claims for negligence and negligence *per se* are precluded by Illinois's economic

[2] CHS submits that Plaintiffs' justification for factual errors in the FAC as "scrivener's error" is insufficient. *See e.g., Sinha v. Bradley Univ.*, 995 F.3d 568, 576 (7th Cir. 2021) ("[w]e reject [plaintiff's] attempt to characterize paragraph 25 of his complaint as a mere scrivener's error. The district court correctly noted that [plaintiff] failed to amend or clarify his complaint despite ample opportunities to do so.").

loss doctrine, regardless of Plaintiffs' allegations of embarrassment, humiliation, frustration, and emotional distress. *See Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 451 (Ill. 1982); *Doe v. Genesis Health Sys.*, 2024 WL 3890164, (C.D. Ill. Aug. 21, 2024) (applying *Moorman* where plaintiffs alleged an express contract and identical allegations of embarrassment, humiliation, frustration and emotional distress as this case). Plaintiffs suggest that the Court should ignore the *Genesis* decision because an amended complaint has been filed in that case. *See* Opp. at p. 6 n. 1. The filing of an amended complaint does not negate the holding in *Genesis* or in any way nullify the application of *Moorman.* The sound reasoning espoused by *Genesis* should be applied here as well.

The cases cited in Plaintiffs' opposition do not lead to a contrary result. In *Flores* and *Loyola* the courts found that *Moorman* doctrine did not apply because plaintiffs alleged no express contract between the parties, <u>not</u> because there were sufficient allegations of non-economic injury. *See Smith v. Loyola Univ. Med. Ctr.*, No. 23-cv-15828, 2024 WL 3338941, at *7 n.5 (N.D. Ill. July 9, 2024) ("[t]he plaintiffs do not allege that an express contractual obligation governed LUMC's duty to safeguard their health data. The economic loss doctrine is therefore inapplicable."); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 57 (Ill. App. Ct. 2023) ("[a]pplying the *Moorman* doctrine to this data breach case would stretch the applicability of the doctrine . . . given that there is no express contract between the parties."). *Stein v. Edwards-Elmhurst Health* does not discuss *Moorman* or the economic loss doctrine at all. *See*, *Stein v. Edwards-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *9 (Feb. 21, 2025).

In a second attempt to escape *Moorman*, Plaintiffs argue that their damages arise from CHS's intentionally false representations and therefore fall under a *Moorman* exception. Opp. at p. 5. This argument fails as Plaintiffs have not alleged fraudulent misrepresentation in the FAC.

Had Plaintiffs pled intentionally false representations as an exception to *Moorman* would require Plaintiffs to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Dual-Temp of Illinois Inc. v. Hench Control Corp.*, No. 09-cv-595, 2011 WL 1642513, at *5 (N.D. Ill. May 2, 2011). A plaintiff must plead "the who, what, when, where, and how" to sufficiently claim fraudulent misrepresentation qualifying for the *Moorman* exception. *Id.* The allegations in the FAC do not meet this standard. Ultimately, Plaintiffs have alleged an express contract between the parties. FAC at ¶ 273. Their alleged damages all arise out of allegedly broken promises from that express contract. Accordingly, the *Moorman* doctrine applies, and Plaintiffs' negligence claim should be dismissed.

b. Negligence Per Se

As to Plaintiffs' negligence *per se* claim, Plaintiffs ignore the specificities of Illinois law. In Illinois, a plaintiff can establish the duty element of a regular negligence claim using a statutory standard. *See, e.g., A.D. v. Aspen Dental Management A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-cv-1404, 2024 WL 4119153 at *4 (N.D. Ill. Sept. 9, 2024) (finding a duty under PIPA). Plaintiffs' argument that their allegations under FTC Section 5 and HIPAA are sufficient for a negligence claim strikes against an argument that CHS does not make. *See* MTD at 6–7. Illinois's standalone negligence *per se* claim, that is, imposition of strict liability for a statutory violation requires legislative intent for strict liability. *See Flores*, 2023 IL App (1st) 230140 at ¶ 28 ("[a] violation of a statute only constitutes negligence *per se* (which would mean strict liability) if the legislature clearly intends for the act to impose strict liability.").

Plaintiffs reference "Defendant's private right of action argument," but CHS makes no arguments regarding a private cause of action. Opp. at p. 6. Rather, CHS argues that a statute must

intend strict liability. MTD at pp. 7–8. Plaintiffs do not dispute that the statutes they reference are not intended to impose strict liability.

Additionally, the cases cited by Plaintiffs do not support their argument and instead support CHS's Motion. In *Flores* and *Perdue,* the trial court dismissed the plaintiffs' negligence *per se* claims because they were barred by the *Moorman* doctrine (*Perdue*) and because the statutes that were allegedly violated did not impose strict liability (*Flores*). *See Perdue v. Hy-Vee, Inc.*, 455 F.Supp.3d 749, 761 (C.D. Ill. 2020); *Flores*, 2023 IL App (1st) 230140 at ¶ 28.[3] Plaintiffs' negligence *per se* claim fails and should be dismissed for the same reasons.

c. Illinois Eavesdropping Statute

Plaintiffs next raise a confusing take on the preemption doctrine—suggesting that if their claim is sufficient for civil lability under the federal Electronic Storage Communications Act ("ECPA"), Plaintiffs' claim is automatically sufficient under the Illinois Eavesdropping Statute ("IES"). Opp. at p. 16.[4] This is inaccurate. To the extent Plaintiffs suggest that the IES is preempted by federal law, that would suggest that the ECPA would displace the IES where the two conflict; preemption does not equate to two statutory claims for the price of one. The proper argument is with respect to the merits of CHS's claim.

Plaintiffs' opposition fails to respond to the actual content of CHS's argument. Contrary to Plaintiffs' contention, CHS does not deny that the IES contemplates and applies to electronic communications. *See* Opp. at p. 16. Rather, CHS argues that the statute draws a clear distinction between "private conversations" which are defined as "oral communications" and electronic

[3] *Aspen, Loyola and Elmhurst,* also cited by Plaintiffs, do not address negligence *per se* at all. *See generally, Aspen* 2024 WL 4119153; *Loyola,* 2024 WL 3338941; *Elmhurst* 2025 WL 580556.
[4] CHS maintains that Plaintiffs have failed to state a claim under ECPA as set forth in its Motion to Dismiss and further set forth herein.

communications. *See* MTD at p. 18. CHS submits that the drafters intended to treat oral conversations separately and deserving of separate protections from electronic communications and, under the plain text of the statute, does not prevent interceptions of electronic communications when the interceptor is a party—only oral communications. *See Id.*

Plaintiffs accuse CHS of "rely[ing] entirely on its own interpretation of the statute and provides the Court with no law to guide its analysis." Opp. at p. 16. This is not true—CHS cites to and relies on the interpretation of the Northern District of Illinois in *A.D. v. Aspen Dental*—a case Plaintiffs cite in support throughout their Opposition. *See* MTD at p. 18 (*citing Aspen*, 2024 WL 4119153 at *4). The Court in *Aspen Dental* clearly states: "[t]he difference in these definitions suggests legislative intent to distinguish between the disclosure of conversations, like those occurring in-person or over the phone, and electronic communications, like the private user data and appointment scheduling information at issue here." *Aspen* 2024 WL 4119153 at *4. This interpretation has also been upheld in *Elmhurst*, which is also cited by Plaintiff throughout their Opposition. *See Elmhurst*, 2025 WL 580556, at *7 (dismissing IES claim where Plaintiffs did not allege interception of an oral communication and defendant was a party to allegedly intercepted electronic communications.). There is sufficient support for CHS's interpretation of the statute based both in the text of the statute itself and in relevant caselaw. Plaintiffs cannot point to any contrary authority and do not engage with the actual language of the statute. Accordingly, Plaintiffs' IES claim must be dismissed.

d. Electronic Communications Privacy Act - 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702

Purportedly invoking the Northern District's decisions in *Loyola, Aspen Dental; Kurowski IV; and Hartley* in support of their claims pursuant to"18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702", Plaintiffs suggest that these cases support denial of a motion to dismiss claims under these

specific statutes. Opp. at p. 18. This is inaccurate. *Loyola, Aspen Dental, Kurowski IV,* and *Hartley* only address 18 U.S.C. § 2511(1) in the context of the crime-fraud exception to that section. As discussed in CHS's MTD, CHS believes these cases are distinguishable as to 18 U.S.C. § 2511(1) because the specific allegations in Plaintiffs' FAC are not separate and distinct from the alleged crime or tort. MTD at pp. 20–21. But as to 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702, these four cases do not discuss these statutes at all.

None of these cases, nor any other case in the Seventh Circuit, has found that a website acts as a "electronic communication service" for the purposes of 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702 when collecting "cookie" information from users that access the website. When addressed in this context, Courts have found that such websites are not electronic communication services. *See, e.g., Kurowski v. Rush Sys. for Health*, 659 F.Supp.3d 931, 940 (N.D. Ill. 2023) (*Kurowski I*) (granting motion to dismiss on a Stored Communication Act ("SCA") claim where defendant did not provide a service allowing patients to communicate with providers). In general, the Seventh Circuit only finds that a website acts as an electronic communication service when it provides or facilitates some form of person-to-person communications, such as in internal company e-mail. *See, e.g., Pascal Pour Elle, Ltd. v. Jin*, 75 F.Supp.3d 782, 786 (N.D. Ill. 2014) (finding that defendant was an electronic communication service because it "provides its users with the ability to send email and text messages"); *Devine v. Kapasi*, 729 F.Supp.2d 1024, 1027 (N.D. Ill. 2010) (defendant acted as electronic communication service by providing internal e-mail system). No court in this Circuit has found that a website that simply collects "cookie" information and allegedly shares it with advertisers acts as an electronic communication service. To find otherwise would be a drastic expansion of the definition of "electronic communication service" as used in these statutes.

Cases outside of the Seventh Circuit cited by Plaintiffs are distinguishable. In *In re BetterHelp, Inc.*, Plaintiffs alleged that the defendant's website acted as a "conduit" and facilitated communications between the plaintiffs and their therapists on the website. *See In re BetterHelp, Inc.*, No. 23-cv-01033-RS, 2024 WL 4504527, at * 2 (N.D. Cal. Oct. 15, 2024) ("[t]he FACC alleges, however, that BetterHelp customers communicate with their therapists through the conduit of BetterHelp's websites."). No such allegations are present here and Plaintiffs do not allege that they had person-to-person communications with a medical professional through CHS's website. In *Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.*, the court, in analyzing a motion for preliminary injunction, did not address whether the defendant was an "electronic communication service", and only found that the defendant "likely violated the SCA by downloading, copying, or transferring to her personal email account trade-secret material." *Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.*, 793 F.Supp.2d 1302, 1316 (N.D. Ga. 2011).

Plaintiffs also argue that it does not matter if CHS was the intended recipient of the communications under 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702, because the crime-tort exception applies. Opp. at p. 19. Plaintiffs are incorrect. The crime-tort exception to the party exception only applies in cases of <u>interceptions</u>, *i.e.,* 18 U.S.C. § 2511(1), not disclosures. The crime tort exception is found in 18 U.S.C. § 2511(2)(d): "it shall not be unlawful . . . for a person not acting under color of law to <u>intercept</u> a wire, oral, or electronic communication, where such a is a party to the communication . . . unless such communication is <u>intercepted</u> for the purpose of committing any criminal or tortious act . . .". Plaintiffs allege that CHS violated 18 U.S.C. § 2511(3), which does not involve interceptions, only disclosures: ". . . an electronic communication service . . . shall not intentionally <u>divulge</u> the contents of any communication . . . ." 18 U.S.C. §

2511(3)(a). As discussed in its MTD, CHS was the intended recipient of the information and therefore was allowed to disclose the information to third parties under 18 U.S.C. § 2511(3). There is no crime-tort exception and it does not apply to this subsection. Similarly, 18 U.S.C. § 2702 does not include a crime-tort exception. Plaintiffs have not established a basis for application of the crime-tort exception in this context.[5] Simply stated, CHS is a party to the communications and it is not an electronic communications service. Accordingly, Plaintiffs' claims under 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702 must be dismissed.

e. CFAA

Plaintiffs' Opposition to CHS's Motion to Dismiss their CFAA claim introduces new claims not included in the FAC and fundamentally misunderstands the CFAA. While pleading that "Defendant exceeded and continues to exceed authorized access to Plaintiffs' and the Class Members' protected computers and obtained information thereby" (FAC at ¶ 401), Plaintiffs now argue the contrary: that CHS did not exceed authorized access to their computers but rather CHS had no authorized access to disclose Plaintiffs' data. Opp. at p. 20–21. There is no plausible interpretation of the statute to support Plaintiffs' contention that sharing information obtained through authorized access to a one's computer constitutes a violation of the CFAA.

An individual violates the CFAA if he intentionally accesses a protected computer without authorization or exceeds authorized access, and thereby obtains information. 18 U.S.C. § 1030(a)(2). The CFAA was passed in response to "hackers [that] hatched ways to coopt computers for illegal ends." *Van Buren v. U.S.*, 593 U.S. 374, 378 (2021). Accordingly, the CFAA governs access to and use of *a computer,* not data. Plaintiffs nevertheless argue that CHS's alleged

[5] Plaintiffs' citation to *McCulley v. Banner Health,* 2024 U.S. Dist. LEXIS 89232, at *8 (D. Ariz. May 10, 2024) is inapposite as it deals with 18 U.S.C. § 2511(1) and interceptions, not disclosures pursuant to 18 U.S.C. § 2511(3) or 18 U.S.C. § 2702.

disclosure of Plaintiffs' data violates the CFAA. Opp. at p. 20. Plaintiffs lack any statutory or legal basis to make such an argument.[6]

Nevertheless, Plaintiffs argue that they are entitled to discovery as to CHS's authority to access Plaintiffs' computers and the scope of that authorization. This is preposterous. Under Plaintiffs' argument, any plaintiff would be entitled to discovery on a CFAA claim simply by alleging that she logged onto a website. Plaintiffs' FAC does not contain any set of facts that could be construed as a CFAA violation. Plaintiffs do not allege that CHS accessed their computer without authorization—Plaintiffs willingly connected with CHS's website—or that CHS accessed parts of Plaintiffs' computer it was not authorized to access. Such allegations are necessary to state such a claim. The cases that Plaintiffs cite in support are distinguishable because they include such allegations. *See, e.g., Moonlight Mountain Recovery, Inc. v. McCoy*, No. 1:24-cv-00012-BLW, 2024 WL 4027972, at *4 (D. Idaho, Sept. 3, 2024) (denying motion to dismiss where plaintiff alleged that defendant "was not authorized to access some of the files he allegedly accessed"); *U.S. v. Thompson*, No. CR19-159RSL, 2022 WL 834026, at *4 (W.D. Wash. March 21, 2022) (denying motion to dismiss where plaintiff alleged that defendant utilized stolen credentials to access information she was not authorized to access). Plaintiffs have not established any facts suggesting a violation of the CFAA and Plaintiffs' CFAA claim must be dismissed.

## III. <u>Conclusion</u>

For the reasons set forth above and those more fully set forth in CHS's Motion to Dismiss, CHS's Motion should be granted and Plaintiffs' First Amended Complaint should be dismissed.

---

[6] Plaintiffs also argue that the CFAA was violated because the third parties like Facebook and Google had no authorization to access Plaintiffs' computers. But Plaintiffs' FAC contains no allegations that Facebook or Google ever had direct access to Plaintiffs' computers, only that CHS forwarded Plaintiffs data to them. *See* FAC at ¶¶ 399–404.

Date: March 13, 2025

Respectfully Submitted,

*/s/* Thomas S. LaSalle
Thomas S. LaSalle, Esquire
John M. Coleman, Esquire
HENNESSY & ROACH, PC
70 W. Madison Street
Suite 1100
Chicago, IL 60602
Phone: 312.346.5310
tlasalle@hennessyroach.com
jcoleman@hennessyroach.com

Jill H. Fertel
Conor J. Hafertepe
**CIPRIANI & WERNER, P.C.**
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
Tel: (610) 567-0700
Fax: (610) 567-0712
E: jfertel@c-wlaw.com
E: chafertepe@c-wlaw.com

*Attorneys for Chestnut Health Systems, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Defendant Chestnut Health Systems, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss Jane Doe 1's and Jane Doe 2's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)*was electronically filed with the Clerk of the Clerk using CMF/ECF which will deliver electronic copies of this filing to the designated emails addresses for all counsel of record and the following *pro hac vice forthcoming attorneys* will be emailed a time-stamped copy at the following email addresses:

Amina A. Thomas *
Mallory K. Schiller*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
athomas@cohenandmalad.com
mschiller@cohenandmalad.com

Samuel J. Strauss*
Raina Borelli*
STRAUSS BORELLI PLLC
908 N. Michigan Avenue, Suite 1610
Chicago Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

J. Gerard Stranch, IV*
Andrew E. Mize*
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

**Pro Hac Vice Forthcoming* Counsel for Plaintiffs and the Proposed Class

Dated: March 13, 2025

/s/ Thomas S. LaSalle
Thomas S. LaSalle, Esquire
John M. Coleman, Esquire
HENNESSY & ROACH, PC
70 W. Madison Street, Suite 1100
Chicago, IL 60602
Phone: 312.346.5310
tlasalle@hennessyroach.com
jcoleman@hennessyroach.com