IN THE
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

DOE 1 et al,
      Plaintiffs,

v.                                                            Case No. 1:24-cv-01475-JEH-RLH

CHESTNUT HEALTH SYSTEMS,
INC.,
      Defendant.

## Order

Now before the Court is the Defendant's Motion to Dismiss. (D. 17).[1] For the reasons stated, *infra*, the Motion is GRANTED and DENIED in part. The Court dismisses without prejudice counts (I) Negligence; (II) Negligence *Per Se*; (VI) Bailment; (VII) Conversion; (VIII) Trespass to Chattel; (IX) Violation of the Illinois Eavesdropping Statute; (X) Violation of the Electronic Communications Privacy Act; (XIII) Violation of the Computer Fraud and Abuse Act. Counts (XI-XII), violations of the Electronic Communication Privacy Act, are dismissed with prejudice. Count (III) Breach of Express Contract, Count (IV) Breach of Implied Contract, and Count (V) Unjust Enrichment, may proceed. The Plaintiffs shall have leave to amend their Complaint within 14 days if they believe they can state a claim in accordance with this Order.

## I

On November 22, 2024, the Plaintiffs commenced this putative class action against the Defendant, Chestnut Health Systems, Inc. ("CHS"), alleging various wrongful disclosures of Plaintiffs' personally identifiable information ("PII") and

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

personal health information ("PHI"). (D. 1). On January 10, 2025, the Defendant filed a Motion to Dismiss, (D. 11), and the Plaintiffs subsequently filed an amended Complaint on January 24, 2025. (D. 13). On February 21, 2025, the Defendant filed a Motion to Dismiss all counts of the amended Complaint, (D. 17), to which the Plaintiffs filed a Response in opposition on March 6, 2025. (D. 20). On March 14, 2025, the Defendant filed its Reply to the Plaintiffs' Response after being granted leave to do so by the Court. (D. 22). *See* 03/14/2025 Text Order. The matter is now fully briefed.

II

Plaintiffs have been patients of CHS since 2023. (D. 13 at ECF p. 38). CHS is a private, non-profit corporation operating in Bloomington, Illinois, that "offers a comprehensive scope of behavioral human services" including substance abuse treatment, mental health treatment, primary care, and other behavioral therapies. *Id.* at ECF p. 12. As part of its business, CHS maintains a website and other online services that allow patients to search and access health information, make appointments and payments, find services and contact CHS, among other things. *Id.* at ECF p. 13. Plaintiffs allege that they used CHS' online services to seek mental health treatment and counseling, among other things, and communicated confidential patient information to CHS that included information about their status and location as patients, the treatments sought, and certain health conditions. *Id.* at ECF p. 38-43. Plaintiffs assert that, contrary to "its unique position as a massive and trusted healthcare provider, [CHS] knowingly configured and implemented into its website . . . code-based tracking devices known as 'trackers' or 'tracking technologies,' which collected and transmitted Plaintiffs and Class Members' Private Information to Facebook, Google, and other third parties, without Plaintiffs and Class Members' knowledge or authorization." *Id.* at ECF p. 5. Plaintiffs further allege that these trackers were used by the Defendant to build data profiles, enhance its marketing services, create targeted online advertisements, and sell the information for profit. *Id.*

2

at ECF p. 8. Plaintiffs allege that "[s]uch information allows third parties (e.g., Facebook) to learn an individual's health conditions and the medical care he or she seeks", which, in turn, is sold to "third-party marketers, who then target Plaintiffs and Class Members with online advertisements, based on the information they communicated to [the] Defendant via the [w]ebsite." *Id.* at ECF p. 8. Plaintiffs allege that the "Defendant made express and implied promises to protect Plaintiffs' and Class Members' Private Information and maintain the privacy and confidentiality of communications that patients exchanged with Defendant" and that the Defendant "owed common law, statutory, and regulatory duties to keep Plaintiffs' and Class Members' communications and Private Information safe, secure, and confidential." *Id.* at ECF p. 9-10. To remedy these alleged harms, Plaintiffs filed the instant cause of action.

Plaintiffs' amended Complaint alleges thirteen causes of action which are as follows: (I) Negligence; (II) Negligence Per Se; (III) Breach of Express Contract; (IV) Breach of Implied Contract; (V) Unjust Enrichment; (VI) Bailment; (VII) Conversion; (VIII) Trespass to Chattel; (IX) Violation of the Illinois Eavesdropping Statute; (X-XII) Violation of the Electronic Communications Privacy Act; (XIII) Violation of the Computer Fraud and Abuse Act. (D. 13 at ECF p. 10-11). The Defendant has moved to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). (D. 17-1 at ECF p. 6).

### III

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief". FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (2007)). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.* The Court is to draw all reasonable inferences in favor of the non-movant, but the Court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 665-66 (7th Cir. 2014) (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).

## A

In Count One, the Plaintiffs allege negligence. (D. 13 at ECF p. 65-66). Specifically, Plaintiffs allege that the Defendant breached the duty it "owed to Plaintiffs and Class Members . . . to exercise reasonable care in handling and using Plaintiffs' . . . Private Information" by disclosing that information to third parties via the tracking technologies on the Defendant's website and that the Defendant's "duty arose as a result of industry standards and the physician-patient relationship to keep patients' Private Information" confidential. *Id.* The Defendant has moved to dismiss, asserting that the *Moorman* doctrine bars tort claims of this kind. (D. 17-1 at ECF p. 10-11). For the reasons that follow, the Court agrees that this claim must be dismissed, but on different grounds previously identified by the Court in a similar case. *See Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *4 (C.D. Ill. 2025).

In Illinois, "[t]o state a claim for negligence, a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach was the proximate cause of plaintiff's injuries." *Flores v. Aon Corp.*, 242 N.E.3d 340, 353 (Ill. App. Ct. 2023) (citing *Cowper v. Nyberg*, 28

N.E.2d 768, 772 (Ill. 2015)). A duty of care can arise at common law or by statute. *Barnett v. Zion Park Dist.*, 665 N.E.2d 808, 812 (Ill. 1996). However, a statute alone cannot create a common law duty. *See Millenium Park Joint Venture, LLC v. Houlihan*, 948 N.E.2d 1, 16 (Ill. 2010) ("'Common law' is simply the body of law derived from judicial decisions rather than from statutes or constitutions."). Accordingly, Plaintiffs' common law claim of negligence can only survive if the common law recognizes the Defendant owed a duty of care with respect to the information at issue in this case. *Id.*

The Illinois Supreme Court has said, "Common law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision." *Id.* The Illinois Supreme Court has not recognized a duty to safeguard personal information, and the appellate courts have reached conflicting conclusions. *Compare Flores v. Aon Corp.*, 242 N.E.3d 340, 354 (Ill. App. Ct. 2023) *with Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010). That leaves the Court bound to follow controlling decisions by the Seventh Circuit and the Illinois Supreme Court, neither of which have yet to recognize a common law duty to safeguard personal information. To the contrary, in 2018, the Seventh Circuit reaffirmed that "Illinois has not recognized an independent common law duty to safeguard personal information" and also found no reason why "the Illinois Supreme Court would likely disagree with the *Cooney* analysis on this issue of duty under the common law . . .." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (citing *Cooney*, 943 N.E.2d at 29) (internal citations omitted). Because the Plaintiffs assert a common law claim of negligence arising out of a duty that is not recognized in Illinois, Plaintiffs' claim must fail.[2] *See Washington v. City of Chi*, 720 N.E.2d 1030, 1032 (Ill. 1999) ("Unless a duty is owed, there is no negligence, and plaintiffs cannot recover as

---

[2] Plaintiffs assert that the "duty arose as a result of industry standards and the physician-patient relationship to keep patients' Private Information . . . secret", (D. 13 at ECF p. 65); however, as discussed, a common law duty cannot arise from either of those, and the Court is without authority to the contrary.

a matter of law".) (internal citations omitted). Therefore, Plaintiffs' common law negligence action is dismissed without prejudice for failing to state a claim.

**B**

In Count Two, Plaintiffs allege negligence *per se*. (D. 13 at ECF p. 68). In pleading their claim, Plaintiffs assert that the Defendant violated the following statutes or regulations:

> Pursuant to the laws set forth herein, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C and the other sections identified above, and Illinois law, including the Illinois Medical Patient Rights Act ("MPRA"), 410 Ill. Comp. Stat. 50/3(d), and the Illinois Personal Information Protection Act ("IPIPA"), 815 Ill. Comp. Stat. 530/5, /45, et seq. . ..

*Id.*[3]

In Illinois, (1) "[a] violation of a statute or ordinance" that is (2) "designed to protect human life or property is *prima facie* evidence of negligence." *Flores*, 242 N.E.3d at 354 (citing *Kalata v. Anheuser-Busch Cos. Inc.*, 581 N.E.2d 656, 661 (Ill. 1991)). However, such a violation only constitutes negligence *per se* "if the legislature clearly intends for the act to impose strict liability." *Id.* (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999)). "A party injured by such a violation may only recover by showing that 'the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs

---

[3] The Court notes that in a similar case and claim, *Doe*, 2025 WL 1000192, at *4, the Court found Plaintiffs' allegations did not meet the "short and plain statement" standard required by Federal Rule of Civil Procedure 8(a). However, because the parties do not appear to dispute that the broad regulatory provisions alleged by the Plaintiffs fall beyond the ambit of negligence *per se*, the Court continues its analysis.

from the kind of injury that he suffered.'" *Id.* (citing *Kalata*, 581 N.E.2d at 661). Here, the Plaintiffs allege violations of a number of broad regulatory provisions that are insufficient to establish a claim of negligence *per se* because regulations do not qualify as either a statute or an ordinance.[4] *See Flores*, 242 N.E.3d at 354. Accordingly, the Court considers the remaining statutory bases that Plaintiffs rely on to support their negligence *per se* claim which are (1) The FTC Act, (2) HIPAA, (3) The Illinois Medical Patient Rights Act ("MPRA") and (4) The Illinois Personal Information Protection Act ("PIPA"). (D. 13 at ECF p. 68).

The Defendant argues that "Illinois courts have already found that the FTC Act and HIPAA do not intend to impose strict liability and therefore do not support a claim for negligence *per se*." (D. 17-1 at ECF p. 12). Indeed, in *Flores*, the Illinois Court of Appeals recently found "no support for the notion that the legislature clearly intended to impose strict liability for FTC Act violations." 242 N.E.3d at 355 (citing 15 U.S.C. § 45). And in *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, 2024 WL 18221, at *4 (N.D. Ill. 2024), the Court similarly found that the Court does not "have any authority before it that would support a finding of strict liability" with respect to either the FTC Act or the HIPAA. The same is true here, and that fact is fatal to the Plaintiffs' negligence *per se* claims pursuant to the FTC Act and the HIPAA. That leaves the Plaintiffs with only the MPRA and the PIPA as potentially viable statutory avenues to pursue their claim. However, neither the statutory text of the MPRA, nor the PIPA, provide support to conclude that the legislature intended to impose strict liability for alleged violations. *See* 410 ILL. COMP. STAT. §§ 50/0.01-99; 815 ILL. COMP. STAT. §§ 530/1-900. Accordingly, the Plaintiffs' claim of negligence *per se* is dismissed without prejudice for failing to state a claim upon which relief can be granted.

## C

---

[4] In its Response to the Motion to Dismiss, the Plaintiffs fail to respond to the Defendant's argument that regulatory violations cannot serve as the basis for a negligence *per se* claim. (D. 20 at ECF p. 7-8). Failing to respond results in waiver. *LeSEA Inc. v. LeSEA Broad. Co.*, 379 F. Supp. 3d 732, 739 (N.D. Ind. 2019) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)).

In Count Three, the Plaintiffs plead breach of contract in the alternative to their negligence and negligence *per se* causes of action. (D. 13 at ECF p. 71). Plaintiffs claim that they entered into an "express agreement whereby Defendant agreed to provide medical care and treatment, and that in the course of providing said treatment" CHS agreed not to disclose Plaintiffs' information except as authorized pursuant to the written "Privacy Policies, including, but not limited to,[5] Chestnut Health's Privacy Statement and Patient Rights and Responsibilities, in which Defendant promised only to disclose Plaintiffs' . . . PHI for marketing purposes with said patients' written authorization." *Id.* Plaintiffs state that they complied with the contract and that the Defendant breached the contract by "disclosing their Private Information to third Parties" without authorization. *Id.* at ECF p. 71-72. As a result, Plaintiffs claim they have suffered "monetary damages; loss of privacy; unauthorized disclosure of Private Information; unauthorized access to Private Information by third parties; use of the Private Information for advertising purposes; embarrassment, humiliation, frustration, and emotional distress; decreased value of Private Information; lost benefit of the bargain; and increased risk of future harm resulting from further unauthorized use and disclosure of their information." *Id.* at ECF p. 72. In response, the Defendant argues that Plaintiffs have waived their claims because "CHS' Terms of Use state that 'by accessing or using any part of this website you signify your assent to these terms and conditions.'" (D. 17-1 at ECF p. 14). Those terms read in relevant part:

> BY VISITING THIS WEBSITE, YOU AGREE TO HOLD HARMLESS CHESTNUT, AND ANY AFFILIATED CHESTNUT ENTITY, AND EACH OF THEIR OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, FROM AND AGAINST ALL CLAIMS, ACTIONS, DEMANDS,

---

[5] Plaintiffs suggest other express contracts may have been breached in addition to "Chestnut Health's Privacy Statement and Patient Rights and Responsibilities". (D. 13 at ECF p. 71). However, because the Plaintiffs do not plead any additional express contracts, the Court will not entertain others.

> LIABILITIES, JUDGMENTS AND SETTLEMENTS, INCLUDING WITHOUT LIMITATION, FROM ANY DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY, PUNITIVE OR ANY OTHER CLAIM YOU MAY INCUR IN CONNECTION WITH YOUR USE OF THIS WEBSITE, INCLUDING, WITHOUT LIMITATION, ANY ECONOMIC HARM, LOST PROFITS, DAMAGES TO BUSINESS, DATA OR COMPUTER SYSTEMS, OR ANY DAMAGES RESULTING FROM RELIANCE ON ANY CONTENT OR RESULTING FROM ANY INTERRUPTIONS, WORK STOPPAGES, COMPUTER FAILURES, DELETION OF FILES, ERRORS, OMISSIONS, INACCURACIES, DEFECTS, VIRUSES, DELAYS OR MISTAKES OF ANY KIND, EVEN IF YOU HAVE PREVIOUSLY ADVISED CHESTNUT OF THE POSSIBILITY OF SUCH CLAIM.

(D. 17-1 at ECF p. 14).

"To state a claim for breach of contract in Illinois, a plaintiff must plead: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages.'" *Hernadez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (citing *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016)). The Plaintiffs have adequately alleged the preceding elements: the alleged breach of the privacy policy, the Plaintiffs' performance of their obligations, and resulting damages from the Defendant's breach. Consequently, the only remaining issue is whether the terms of use relied upon by the Defendant constitutes a valid waiver of the Plaintiffs' claims. (D. 17-1 at ECF p. 14-15). With respect to the issue of waiver, the Plaintiffs correctly point out that the "Defendant cannot free itself of liability by pointing to these terms because, reaching Defendant's conclusion would require interpretation in Defendant's favor—and the Court must make all inferences in Plaintiffs' favor." (D. 20 at ECF p. 9). Indeed, this is a factual dispute over the terms of the alleged contract that the Court cannot resolve

at this juncture, particularly given that the Illinois Supreme Court has held that "[a] party cannot promise to act in a certain manner in one portion of a contract and then exculpate itself from liability for breach of that very promise in another part of the contract." *Jewelers Mut. Ins. Co. v. Firstar Bank of Ill.*, 820 N.E.2d 411, 415 (2004). Thus, Plaintiffs' breach of contract claim survives the Motion to Dismiss and the claim may proceed.

### D

In Count Four, the Plaintiffs plead breach of implied contract. (D. 13 at ECF p. 73-74). The Defendant argues that the Plaintiffs have failed to plead a breach of implied contract claim. (D. 17-1) (citing *Gonzalzles v. Am. Exp. Credit Corp.*, 733 N.E.2d 345, 206 (Ill. App. Ct. 2000). However, *Gonzalzles* discusses the elements for a breach of contract, not a breach of implied contract. 733 N.E.2d at 206. True, "the elements of an implied-in-fact contract are the same as those of an express contract", *iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 224 N.E.3d 221, 232 (Ill. App. Ct. 2022); however, in Illinois, an implied contract "can either be implied in fact or in law." *Marcatante v. City of Chi., Ill.*, 657 F.3d 433, 440 (7th Cir. 2011). Though it is unclear at this stage which avenue the Plaintiffs are pursuing, the Court need not resolve that issue at this stage because under either standard the Plaintiffs' allegations suffice.[6] *Id.* at 440-442. And while the Court is mindful that, ordinarily, "an implied contract cannot coexist with an express contract on the same subject", (D. 17-1 at ECF p. 15) (citing *Marcatante*, 657 F.3d at 440), *Marcante* discussed dismissal at the summary judgment stage, not the pleading stage, and the Federal Rules of Civil Procedure allow "alternative and even inconsistent pleadings" so "parties may tailor their theories as they conduct discovery and learn more about the case." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 366 (7th Cir. 2017). Therefore, Plaintiffs' breach of implied contract claim may proceed.

---

[6] The Defendant argues that monetary damages are required to plead breach of contract while also conceding that Plaintiffs allege "monetary damages", it is therefore unavailing. (D. 17-1 at ECF p. 15).

10

### E

In Count Five, the Plaintiffs plead unjust enrichment in the alternative to the breach of implied contract claim. (D. 13 at ECF p. 74-75). In support, Plaintiffs argue that it "conferred a monetary benefit upon Defendant in the form of valuable sensitive medical information . . . that Defendant collected . . . under the guise of keeping this information private" and that the "Defendant collected, used, and disclosed this information for its own gain, for marketing purposes, and for sale or trade with third parties." *Id.* Plaintiffs therefore claim that the Defendant "should be compelled to disgorge into a common fund . . . all unlawful or inequitable proceeds it received as a result . . . ." (D. 13 at ECF p. 75).

To state a claim for unjust enrichment, "'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (quoting *HPI Health Care Servs. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678-79 (Ill. 1989)). Here, the Plaintiffs have alleged as much; in particular, they claim they conferred a "monetary benefit upon Defendant in the form of valuable sensitive medical information" that the "Defendant collected from Plaintiffs . . . under the guise of keeping this information private" and then used that information "for its own gain" despite those benefits rightly belonging to Plaintiffs. (D. 13 at ECF p. 74-75). Nonetheless, as the Defendant correctly notes, "[u]njust enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler and Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (citing *Cleary*, 656 F.3d at 517). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim . . . will stand or fall with the related claim." *Cleary*, 656 F.3d at 517. The Defendant concedes that "Plaintiffs' unjust enrichment claim[] clearly depend[s] and rel[ies] on their theories of negligence, breach of express contract, and breach of implied contract, and therefore should stand or fall with those claims." (D. 17-1 at ECF p. 17). Given that,

and because this Court has found that the breach of express contract and breach of implied contract claims may proceed, the Plaintiffs' unjust enrichment claim also survives the Motion to Dismiss.

## F

In Count Six, the Plaintiffs plead bailment. (D. 13 at ECF p. 76-77). They argue that they "contemplated a mutual benefit bailment" by submitting their "Private Information to Defendant solely for treatment and payment thereof" and that it was "transmitted in trust for [the] specific and sole purpose" of receiving medical treatment with an express contract that the trust was to be executed and that the information was to be accounted for thereafter. (D. 13 at ECF p. 76). They further allege that the information was used for a different purpose and in a different manner than intended because it was used to benefit CHS and for marketing and advertising purposes. *Id.* In response, the Defendant argues that it could not and did not ever have exclusive possession of Plaintiffs' information and therefore fails to state a claim. For the reasons that follow, the Court agrees with the Defendant.

"In order to recover under a bailment theory, the plaintiff must allege: (1) an express or implied agreement to create a bailment; (2) delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." *Am. Amb. Cas. Co. v. Jackson*, 692 N.E.2d 717, 721 (Ill. App. Ct. 1998) (citing *Am. Amb. Cas. Co. v. City of Chi.*, 563 N.E.2d 882, 884 (Ill. App. Ct. 1990)). "Among the necessary elements of a bailment are an agreement by the bailor to transfer or deliver and the bailee to accept exclusive possession of goods for a specified purpose, the actual delivery or transfer of exclusive possession of the property of the bailor to the bailee, and acceptance of exclusive possession by the bailee." *In re Mondelez Data Breach Litig.*, 2024 WL 2817489, *9 (N.D. Ill. 2024) (citing *Kirby v. Chi. City Bank & Tr. Co.*, 403 N.E.2d 720, 723 (Ill. App. Ct. 1980)). Additionally, "where a bailment for the mutual benefit

of the parties is alleged, the plaintiff is required to allege the existence of consideration." *Kirby*, 403 N.E.2d at 723.

The Defendant primarily challenges the requirement of "exclusive possession," and therefore argues the Plaintiffs' claim must fail. (D. 17-1 at ECF p. 18) (citing *In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *9 (N.D. Ill. 2024). In *Mondelez*, the Court observed, "The law of bailment in Illinois does not map onto the circumstances of this case, as no one can have 'exclusive possession' of another person's personal information." 2024 WL 2817489, at *9. Further, the Court noted, "'federal court is not the place to press innovative theories of state law.'" *Id.* (quoting *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 907 (S.D. Ill. 2008)). "When given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path (at least until the Illinois Supreme Court tells us differently)." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994). Plaintiffs attempt to counter this point by arguing that just because the "bailor retains control over the property does not defeat the 'exclusive possession' element of a bailment claim." (D. 20 at ECF p. 13). In support of that contention, Plaintiffs' seemingly cite to *Wright v. Mr. Quick, Inc.*, 472 N.E.2d 478 (Ill. App. Ct. 1984)[7] for the proposition that Illinois appellate courts have allowed bailment claims even "where an automobile owner entered into a bailment with an automobile repair shop to repair the care [sic], but retained the keys, only to have the car damaged while under the bailee's care." (D. 20 at ECF p. 13). But the *Wright* case does not discuss bailment or automobile repair shops. 472 N.E. 2d at 478. At any rate, the Plaintiffs' analogy fails. The circumstances surmised by the Plaintiffs are distinguishable from the instant facts because the exact same vehicle can only be in the "exclusive possession" of the bailee repair shop, whereas the exact same personal information in this case could have been shared electronically with and in

---

[7] Plaintiffs provide only one short cite to "*Wright*, 129 Ill. App. 3d at 425 (1984)", the Court presumes this may have been a mistaken citation to the case above.

the possession of several other persons or entities, including the Plaintiffs themselves. Given the choice between expanding the state law theory of bailment to include the novelty of Plaintiffs' claim here, the Court chooses the narrower and finds the Plaintiffs have not sufficiently alleged that the Defendant had exclusive possession of their personal information. *Todd*, 21 F.3d at 1412. As a consequence, at this stage, the Plaintiffs' claim is not facially plausible because they have not adequately alleged that the Defendant had exclusive possession of the information at issue. *Ashcroft*, 556 U.S. at 663. Accordingly, Count Six is dismissed without prejudice for failing to state a claim. *Id.*

## G

In Count Seven, the Plaintiffs plead conversion in the alternative to other causes of action. (D. 13 at ECF p. 77-78). Plaintiffs assert that they had "good and rightful ownership and possession of their Private Information, which constitutes personal property" and that the "Defendant exerted unauthorized control and dominion over" such information by "knowingly and deliberately" installing trackers on their platforms that disclosed that information to third parties. *Id.* The Defendant argues this claim fails for several reasons. (D. 17-1 at ECF p. 18-19). As to the Defendant's arguments, the Court agrees.

To establish a claim of conversion, the Plaintiff must show "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 806-07 (N.D. Ill. 2011) (citing *Cirrincione v. Johnson*, 703 N.E. 2d 67, 70 (Ill. 1998)). The Defendant challenges whether the Plaintiffs' claim establishes the first two elements. (D. 17-1 at ECF p. 18-19). First, the Defendant argues that the personal information at issue in this case does not qualify as tangible property and that, even if it did, the Plaintiffs "at no point had an absolute and unconditional right to that information."

14

*Id.* Indeed, the Illinois Supreme Court has held that, "ordinarily . . . an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible . . . " *In re Karavidas*, 999 N.E.2d 296, 311 (Ill. 2013) (quoting *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985)). And the Seventh Circuit has plainly stated, "Illinois Courts do not recognize an action for conversion of intangible rights." *Am. Nat'l Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008) (citing *Janes v. First Fed. Sav. & Loan Ass'n*, 297 N.E.2d 255, 260 (Ill. App. Ct. 1973)). While at least one appellate court in Illinois has stated "parties may recover for conversion of intangible assets", *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 807 (Ill. App. Ct. 1998), other appellate courts have reached the opposite conclusion, observing "[o]ur supreme court has stated that an action for conversion lies only for personal property that is tangible or at least represented by or connected with something tangible." *Bilut v. Northwestern Univ.*, 692 N.E.2d 1327, 1334 (Ill. App. Ct. 1998) (citing *In re Thebus*, 483 N.E.2d at 1258)). In the absence of clear guidance to the contrary, this Court is bound by the Seventh Circuit and the Illinois Supreme Court and the "[c]ommon law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision." *Millennium Park Joint Venture*, 948 N.E.2d at 16. With that in mind, the personal information at issue in this case is undoubtedly intangible, and there is no evidence to suggest that it is connected to something tangible. *See In re Karavidas*, 999 N.E.2d at 311. Moreover, the Defendant makes note of the fact that Plaintiffs did not oppose the Motion to Dismiss their conversion claim and the Plaintiffs' failure to respond to the Defendant's argument results in waiver. *LeSEA Inc. v. LeSEA Broad. Corp.*, 379 F. Supp. 3d 732, 739 (N.D. Ind. 2019) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). Accordingly, because the tort of conversion does not apply to the kind of intangible personal information allegedly converted in this case, Count Seven is dismissed without prejudice.

### H

In Count Eight, the Plaintiffs plead trespass to chattel in the alternative to their other causes of action. (D. 13 at ECF p. 78-79). Plaintiffs state that they had "rightful ownership and possession of their Private Information, which constitutes personal property", and that the Defendant "intentionally exercised authority over and used the personal property of Plaintiffs . . . in an unauthorized manner . . . by sharing or disclosing this information to third parties" without authorization. *Id.* They allege the Defendant obtained the information "through fraud or duress" and that the Defendant "knowingly and intentionally exerted unauthorized authority over and used Plaintiffs' . . . Private Information, because Defendant knowingly and deliberately installed trackers on their Online Platforms that collected and disclosed Plaintiffs' . . . Private Information to third parties". *Id.* The Defendant argues that this cause of action fails to state a claim because private information does not qualify as a "chattel" under Illinois law. (D. 17-1 at ECF p. 20). As discussed below, the Court agrees that the information at issue does not qualify as a chattel.

"Trespass to personal property involves an injury to or interferences with possession of chattel, with or without physical force." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 850 (N.D. Ill. 2023) (quoting *Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016)). "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Id.* However, the Court must first determine whether the personal information at issue here qualifies as a chattel; if it does not, as the Defendant argues, Plaintiffs' claim fails. Instructively, in *Fidlar Tech. v. LPS Real Est. Data Sol. Inc.*, 2013 WL 5973938, at *10 (C.D. Ill. 2013), the Court observed that "defining chattels to include not only computers but electronic networks and computer processing power is at odds with traditional understanding of the term, which is limited to material items or living property." Still, the Plaintiffs

16

contend that "Illinois courts have not addressed this issue". (D. 20 at ECF p. 15).[8] To the contrary, however, it appears that some Illinois courts have addressed the issue and determined that trespass to chattels does not apply to intangible property. *See Obolumani v. Young*, 2015 WL 1284064, at *8 (Ill. App. Ct. 2015) ("There is no recognized cause of action in Illinois for a trespass to chattel claim based on trespass to an intangible such as digital information . . . .'"); *In re Est. of Light*, 895 N.E.2d 43, 46 (Ill. App. Ct. 2008) ("Illinois courts have construed 'personal property' and similar terms to include only tangible personal property."). Thus, "[w]hen given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path . . . ." *Todd*, 21 F.3d at 1412. Therefore, because the Court finds the information in dispute does not qualify as a chattel under Illinois law, Count Eight is dismissed without prejudice.

# I

In Count Nine, the Plaintiffs plead violations of the Illinois Eavesdropping Statute.[9] (D. 13 at ECF p. 7). The Plaintiffs appear to allege violations under two theories, 720 ILL. COMP. STAT § 5/14-2(a)(2)[10] and § 5/14-2(a)(5), which respectively prohibit:

> Us[ing] an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation;

---

[8] Plaintiffs' reliance on the Biometric Information Privacy Act is unavailing as trespass to chattels is a common law cause of action. *See Millenium Park Joint Venture, LLC v. Houlihan*, 948 N.E.2d 1, 16 (Ill. 2010) ("'Common law' is simply the body of law derived from judicial decisions rather than from statutes or constitutions.'").

[9] The Court notes that in a similar case and claim, *Doe*, 2025 WL 1000192, at *4, the Court found Plaintiffs' allegations did not meet the "short and plain statement" standard required by Federal Rule of Civil Procedure 8(a). However, because the parties do not appear to dispute that Plaintiffs' claims arise under § 5/14-2(a)(2) and (5), the Court construes Plaintiffs' claims as such.

[10] Plaintiffs cite to "5/14-2(a),-4," which does not exist. (D. 13 at ECF p. 80). The quoted language from the Complaint appears to be from 720 ILL. COMP. STAT § 5/14-2(a)(2) and (5).

and

> Us[ing] or disclos[ing] any information which he or she
> knows or reasonably should know was obtained from a
> private conversation or private electronic communication
> in violation of this Article, unless he or she does so with the
> consent of all of the parties.

720 Ill. Comp. Stat § 5/14-2(a)(2),(5).

The Court addresses each in turn. First, as the Defendant contends, the Illinois Eavesdropping statute defines a "private conversation" as "any oral communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means . . .." 720 Ill. Comp. Stat. § 5/14-1(d). Therefore, because the "Plaintiff does not allege that CHS recorded any private oral communications," the Defendant argues the claim arising under § 5/14-2(a)(2) must be dismissed as a matter of law. The Court agrees, and the cause of action arising under § 5/14-(a)(2) is dismissed. *See A.D. v. Aspen Dental Mgmt.*, 2024 WL 4119153, at *4 (N.D. Ill. 2024) (finding dismissal appropriate where the electronic communications about which Plaintiffs complained did not constitute a "private conversation" under § 5/14-2(a)(2)). To the extent Plaintiffs argue the "IES is not limited to literal 'oral' communications", (D. 20 at ECF p. 17), that may be true in general; however, the Plaintiffs' allege a violation of § 5/14-(a)(2) which only applies to a "private conversation" defined as "any oral communication between 2 or more persons . . .." 720 Ill. Comp. Stat § 5/14-1(d). Plaintiffs' reliance on *People v. Gariano*, 852 N.E.2d 344, 384 (Ill. App. Ct. 2006), and *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022) (discussing § 5/14-2(a)(1),(3)), are misplaced because the former does not reflect the 2014 amendment to the statute, *see Cook Au Vin, LLC v. Mid-Century Ins. Co*, 226 N.E.3d 694, 703 (Ill. App. Ct. 2023) (discussing 2014 legislative amendments to the eavesdropping statute), and the latter does not discuss the sections of the Illinois Eavesdropping Statute at issue here. (D. 13 a ECF p. 79-81) (alleging violations of 720 Ill. Comp. Stat. § 5/14-2(a)(2),(5)).

As to Plaintiffs' claim arising under § 5/14-2(a)(5), because the allegations do not involve any "private conversation" as the statute defines that term, the Court focuses on whether any "private electronic communication" was intercepted in violation of the statute. *See* 720 ILL. COMP. STAT § 5/14-2(a)(5). A "private electronic communication" means:

> any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation. A reasonable expectation shall include any expectation recognized by law, including, but not limited to, an expectation derived from a privilege, immunity, or right established by common law, Supreme Court rule, or the Illinois or United States Constitution.

The Defendant argues that none of the information it gained from Plaintiffs "was collected in violation of the statute" because "Section 14-2(a)(3) only applies to oral conversations" and the "remaining sections only apply to interceptions of private conversations or private electronic communications *to which the alleged offender is not a party*."[11] (D. 17-1 at ECF p. 22) (emphasis in original).

To review, there are five subsections under the umbrella of § 14-2(a), the first two only apply to a "private conversation" which the Court has already determined are inapplicable to the facts alleged. *See* 720 ILL. COMP. STAT § 5/14-2(a). The third applies to "any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication". *See* 720 ILL. COMP. STAT § 5/14-2(a)(3). A party only violates the fourth and fifth provisions if, among other things, the "intended or actual use of the

---

[11] However, § 14-2(a)(3) does not only apply to oral conversations, but instead is explicitly addressed to private electronic communication. *See* 720 ILL. COMP. STAT § 5/14-2(a)(3).

device is contrary to the provisions of this Article" or if the offending party uses or discloses any information that it "knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties." 720 ILL. COMP. STAT § 5/14-2(a)(4),(5). In other words, to violate the fourth or fifth subsections, the offender must intend to or violate another provision of the statute, provided the alleged offender does not have the consent of all the parties.[12] Therefore, to state a viable action under subsection five, as the Plaintiffs do, they must allege a violation of another provision of the statute. 720 ILL. COMP. STAT § 5/14-2(a)(5). In this case, the only other subsection alleged to be violated is subsection (a)(2), which applies only to a "private conversation" — defined as "any oral communication between 2 or more persons" — and the Court has previously determined that oral communications are not applicable to the facts alleged here. 720 ILL. COMP. STAT § 5/14-2(a)(2); 720 ILL. COMP. STAT. § 5/14-1(d). Even assuming, as the Defendant does, that Plaintiffs also allege a violation of subsection three, that section only prohibits the eavesdropping of "any private electronic communication *to which he or she is not a party*", 720 ILL. COMP. STAT § 5/14-2(a)(3) (emphasis added). Here, the Defendant was a party to the communications at issue because the Plaintiffs allege their information was being unlawfully transmitted "as they communicated with Defendant through its Online Platforms." (D. 13 at ECF p. 81). That the Defendant may have shared that information with third parties does not change the fact that they were nonetheless a party to the communication. Accordingly, Count Nine of the Plaintiffs' Complaint is dismissed without prejudice.

## J

In Counts Ten through Twelve, the Plaintiffs plead violations of the Electronic Communications Privacy Act. (D. 13 at ECF p. 84-93). The Defendant maintains that

---

[12] It is not in dispute that the Defendant did not have the consent of all the parties.

Plaintiffs' claims fail because it was a party to the allegedly intercepted communications and is not an electronic communications service. (D. 17-1 at ECF p. 23-28). For the reasons that follow, the Court agrees with the Defendant.

i

In Count Ten, the Plaintiffs alleges that the Defendant violated 18 U.S.C. § 2511(1)(a),(c) and (d) of the Electronic Communications Privacy Act ("ECPA"). (D. 13 at ECF p. 85-86). Plaintiffs assert that the "transmission of Private Information" with the Defendant's website qualifies as an "electronic communication[]," which is defined in relevant part as, "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo optical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). Plaintiffs allege that by utilizing the tracking technology on its website, Defendant intercepted or endeavored to intercept Plaintiffs' electronic communications in violation of § 18 U.S.C. § 2511(1)(a). (D. 13 at ECF p. 85). Moreover, by disclosing such information, the Plaintiffs allege the Defendant violated 18 U.S.C. § 2511(1)(c) and (d). Those sections read in relevant part, that the ECPA is violated, "[e]xcept as otherwise specifically provided in this chapter [by] any person who—"

> intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

or

> intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

or

> intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having

> reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

18 U.S.C. § 2511(1)(a); 18 U.S.C. § 2511(1)(c); 18 U.S.C. § 2511(1)(d).

The ECPA defines an interception as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). It defines an "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication . . .." 18 U.S.C. § 2510(5). In its Motion to Dismiss, (D. 17-1 at ECF p. 23-24), the Defendant asserts that Plaintiffs' claim fails because it was a party to the electronic communications under 18 U.S.C. § 2511(2)(d) of the ECPA, which reads:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(d).

While "[f]ew circuits have addressed this exact issue . . . those that have are split on how it should be decided." *See Kurowski v. Rush Sys. for Health,* 659 F. Supp. 3d 931, 937 (N.D. Ill. 2023). The Seventh Circuit has not squarely addressed this issue. *See generally United States v. Szymuszkiewics*, 622 F.3d 701, 703 (7th Cir. 2010) (finding a Defendant who placed a '"rule' [on his supervisor's computer] that directed Outlook to forward to [the Defendant] all messages she received" constituted an interception). However, *Szymuszkiewics* considered whether the Defendant's acts constituted an interception, not whether he was a party. *Id.* In this case, the Plaintiffs asserts that the

"tracking technology deployed *by* Defendant *effectuated* the sending and acquisition of patient communications." (D. 13 at ECF p. 85-86) (emphasis added). Indeed, all of the electronic communications alleged intercepted by the Defendant in violation of the ECPA could not have occurred without the Plaintiffs communicating with the other intended recipient, and party, CHS. Those facts make CHS—necessarily—a "party to the communication[s]" in this case and under § 2511(2)(d). *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) (finding when the Defendant is the intended recipient of the communication, it is necessarily "one of its parties"); *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024) (finding "the communication necessarily requires Defendants' participation, even if Plaintiffs did not intend to share their information with Defendants"); *Kurowski*, 659 F.Supp. at 938 (finding that Rush System for Health was the intended recipient and a party to the communication in a case that alleged Rush unlawfully disclosed PHI to third parties by using tracking technologies on its web pages).

The Plaintiffs' argument to avoid this conclusion invokes the exception to the exception under § 2511(2)(d), stating the "Defendant intentionally intercepted the content of Plaintiffs . . . electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, invasion of privacy, among others" such as the HIPPA, the FTC Act, and in breach of its fiduciary duty of confidentiality. (D. 13 at ECF p. 86-87). Plaintiffs' argument invokes the exception to the "party" exception, which provides that an individual cannot avail itself of the "party" exception if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). "In sending and in acquiring the content of Plaintiffs' . . . communications relating to the browsing of its Website," Plaintiffs assert that the Defendant's purpose was criminal and tortious. However, "[i]ntent may not be inferred simply by demonstrating that the intentional act of [interception] itself constituted a tort. A

simultaneous tort arising from the act of [interception] itself is insufficient." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *see also Kurowski*, 683 F. Supp. 3d at 844 ("Moreover, it is well established that [the crime or tort exception] only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself."). "Thus, to survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of [interception]." *Caro*, 618 F.3d at 100. Plaintiffs have not done so here. A recitation of the elements that the Defendant's purpose was tortious or criminal, without alleging any facts—independent of the interception itself—that it was done for a criminal or tortious purpose, will not do. *Ashcroft*, 556 U.S. at 678. That the Plaintiffs complain about the interception itself, and not an independent act, is made clear by the fact that the Plaintiffs allege the Defendant's criminal or tortious conduct occurred "simultaneously" and "contemporaneously" with the interception. (D. 13 at ECF p. 8 & 19). Plaintiffs also allege, contradictorily, that the Defendant shared the information with third parties "for the purpose of creating targeted online advertisements and enhanced marketing services", not tortious or criminal conduct. (D. 13 at ECF p. 8 & 19). Therefore, because the Court determines that the Defendant was a party to the communications at issue, and because the Plaintiffs have not pleaded facts sufficient to draw an inference that the Defendant acted with a tortious or criminal purpose, independent of the interception itself, Count Ten is dismissed without prejudice.

### ii

In Counts Eleven and Twelve, the Plaintiffs allege that the Defendant violated 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702(a)(1), respectively. (D. 13 at ECF p. 87-93). Those sections read in relevant part:

> [A] person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

and

> [A] person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service.

18 U.S.C. § 2511(3)(a); 18 U.S.C. § 2702(a)(1).

The Plaintiffs allege that the Defendant's website is an electronic communication service because it provides the "ability to send or receive electronic communications", without which, "internet users could not send or receive communications regarding Plaintiffs' . . . Private Information." (D. 13 at ECF p. 87). Accordingly, Plaintiffs argue, "Defendant divulged the contents of Plaintiffs' electronic communications" to third parties "through the tracking technology" in violation of the preceding provisions. (D. 13 at ECF p. 88 & 91). The Defendant contends that Plaintiffs' claims must fail because it is not "an electronic communication service" and therefore does not fall within the bounds of 18 U.S.C. § 2511(3)(a) or § 2702(a)(1). (D. 17-1 at ECF p. 25-27). The Court agrees that the Defendant is not an "electronic communication service."

The ECPA defines an electronic communication service as "any service which provides to users thereof the ability to send or receive wire or electronic communications". 18 U.S.C. § 2510(15). This definition applies to both of Plaintiffs' causes of actions under 18 U.S.C. § 2511(3)(a) and 18 U.S.C. § 2702(a)(1). *See* 18 U.S.C. § 2711(1) (adopting the terms as defined in § 2510). Properly interpreted, § 2510(15) does not transform every business or entity that merely uses an electronic

communication service in its business operations into a provider of an electronic communication service.

It is not enough to assert, as the Plaintiffs do, that the Defendant is an electronic communication service simply because "in the absence of Defendant's website, internet users could not send or receive communications regarding Plaintiffs' . . . Private Information." (D. 13 at ECF p. 87). That is because there are many steps involved in an electronic communication that, in their absence, would have prevented the Plaintiffs from communicating with the Defendant's website. That alone does not make each step an electronic communication service. To hold otherwise would radically transform the breadth of the ECPA and courts have consistently recognized as much. *See Kurowski,* 659 F. Supp. 3d 931, 937 (N.D. Ill. 2023) (finding that a hospital's patient portal "cannot plausibly be considered an electronic communications service provider within the meaning of the Act"); *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1004 (W.D. Wash. 2022) ("A company that merely utilizes electronic communications in the conduct of its own business is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 523 (N.D. Ill. 2011) ("[C]ourts have consistently acknowledged that internet service providers, e-mail service providers, and telecommunication companies" provide electronic communication services.); *Steinbach v. Vill. of Forest Park*, 2009 WL 2605283, *5 (N.D. Ill. 2009) (finding that Forest Park was not an electronic communication service where it "provided the email address name" to the Plaintiff because another third party "provided the email service"); *United States v. Weaver*, 636 F. Supp. 2d 769, 770 (C.D. Ill. 2009) (finding Microsoft, an Internet Service Provider, provided electronic communication services); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) ("Although JetBlue operates a website that receives and transmits data . . . it is undisputed that it is not the provider of the electronic communication service that allows such data to be transmitted over the internet."). These cases

demonstrate that CHS is not in the business of providing the public with the "ability" to "send or receive wire or electronic communications" under 18 U.S.C. § 2510(15), but is instead a business consumer of electronic communication services. Therefore, because the Defendant is not an "electronic communication service" as that term is defined under § 2510(15), the Defendant cannot be liable under either 18 U.S.C. § 2511(3)(a) or 18 U.S.C. § 2702(a)(1). As a result, Counts Eleven and Twelve are dismissed with prejudice for failing to state a claim upon which relief can be granted.

## K

In Count Thirteen, the Plaintiffs plead a violation of the Computer Fraud and Abuse Act ("CFAA"). (D. 13 at ECF p. 93-94). The Plaintiffs allege that their computers qualified as "protected computers" under 18 U.S.C. § 1030(e)(2)(B) and that the Defendant "exceeded, and continues to exceed, authorized access to Plaintiffs' . . . protected computers" in violation of 18 U.S.C. § 1030(a)(2)(c).[13] (D. 13 at ECF p. 93-94). Section 1030(a)(2)(c) is violated by "whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). A civil action under the CFAA can only be sustained in instances where a person "suffers damage or loss by reason of a violation of this section" and the "conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). Here, Plaintiffs allege that the Defendant's conduct involved one of those factors, namely, that it is a "threat to the public safety" under § 1030(c)(4)(A)(i)(IV), and therefore qualifies as an appropriate civil action under 18 U.S.C. § 1030(g). (D. 13 at ECF p. 93-94). The Defendant argues, *inter alia*, that CHS "did not exceed authorized access to Plaintiffs' computers", (D. 17-1 at ECF p. 29-30), and the Court agrees.

---

[13] The Plaintiffs plead a violation of "18 U.S.C. § 1030(a)(2),(a)(2)(c)." (D. 13 at ECF p. 93). Section 1030(a)(2) is an umbrella provision that includes "(a)(2)(c)." As the other provisions under the ambit of § 1030(a)(2) deal with financial records of a financial institution and information from a "department or agency of the United States" which are not at issue in this case, the Court construes this claim as alleging a violation of only § 1030(a)(2)(c).

The CFAA defines "exceeds authorized access" to mean "access[ing] a computer with authorization and to use such access to obtain or alter information *in the computer* that the accesser is not entitled so to obtain or alter . . . ." 18 U.S.C. § 1030(e)(6) (emphasis added). In this case, in response to the Motion to Dismiss, the Plaintiffs states that "Defendant 'knowingly configured and implemented into *its* website . . . trackers . . . without Plaintiffs . . . knowledge or authorization'" (D. 20 at ECF p. 21) (emphasis added). This will not do. That is because implementing trackers onto *its own* website is not the same as the Defendant exceeding authorized access to the Plaintiffs' computers under 18 U.S.C. § 1030(e)(6). There is simply no evidence to support the inference that the Defendant accessed information "in the computer" of the Plaintiffs, as opposed to the Plaintiffs accessing the Defendant's website. 18 U.S.C. § 1030(e)(6).

Any doubt in this case is foreclosed by *Van Buren v. United States,* 593 U.S. 374, 388 (2021), in which the Supreme Court equated "'exceed[ing] authorized access'" with "the act of entering a part of the system to which a computer user lacks access privileges." There, the Court explained, "In the computing context, 'access' references the act of entering a computer '*system itself*' or a particular 'part of a computer system,' such as files, folders, or databases." *Id.* (emphasis added). The Plaintiffs have not alleged facts that indicate their computer systems—themselves—were accessed by the Defendant in an unauthorized or excessive manner. To the extent Plaintiffs argue there was access without authorization because the "Defendant had no authorized access to disclose their data" at all, (D. 20 at ECF p. 21), that does not get around the fact that there still must be an allegation that supports an inference that the Defendant "accessed" the Plaintiffs' computer system in the first instance. [14] 18 U.S.C. §

---

[14] The Defendants correctly point out that Plaintiffs pleaded the "Defendant exceeded, and continues to exceed, authorized access to Plaintiffs' . . . protected computers", (D. 13 at ECF p. 93), but in their Response to the Motion to Dismiss they change legal theories, seemingly pleading that Defendant's had no "authorized access" under § 1030(a)(2). (D. 20 at ECF p. 21). If Plaintiffs wish to change legal theories, they should seek leave to amend to their Complaint. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023).

1030(a)(2)(C); *see also Van Buren*, 593 U.S. at 389 (supporting the view that "[t]he 'without authorization clause,' . . . protects computers themselves by targeting so-called hackers—those who "acces[s] a computer without any permission at all."). Plaintiffs' expansive reading of the CFAA is of the same ilk that was expressly rejected by the Supreme Court in *Van Buren* as it would amount to "attach[ing] criminal penalties to a breathtaking amount of commonplace computer activity." *Id.* at 393. The Court cannot adopt such broad view here. Therefore, even accepting Plaintiffs' facts as true, they have not stated a claim that is plausible on its face. *See Ashcroft*, 556 U.S. at 678. Accordingly, Count Thirteen is dismissed without prejudice.

## IV

For the reasons stated, *supra*, the Defendant's Motion to Dismiss is GRANTED and DENIED in part. The Court dismisses without prejudice counts (I) Negligence; (II) Negligence *Per Se*; (VI) Bailment; (VII) Conversion; (VIII) Trespass to Chattel; (IX) Violation of the Illinois Eavesdropping Statute; (X) Violation of the Electronic Communications Privacy Act; (XIII) Violation of the Computer Fraud and Abuse Act. Counts (XI-XII), violations of the Electronic Communication Privacy Act, are dismissed with prejudice. Count (III) Breach of Express Contract, Count (IV) Breach of Implied Contract, and Count (V) Unjust Enrichment, may proceed. The Plaintiffs shall have leave to amend their Complaint within 14 days if they believe they can state a claim in accordance with this Order.

*It is so ordered.*

Entered on June 6, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

29